THE STATE OF OHIO, APPELLEE, *v.* KING, APPELLANT.

(No. 82AP-877—Decided June 7, 1983.)

*Mr. Michael Miller,* prosecuting attorney, and *Ms. Karen L. Martin,* for appellee.

*Messrs. Schnorf, Wanick, Loyd & Engwert, Mr. David M. Schnorf, Mr. Christopher C. Loyd* and *Ms. Kelly D. Stimpson,* for appellant.

WHITESIDE, P.J. Defendant, Leo T. King, appeals from his conviction in the Franklin County Court of Common Pleas of one count of auto theft and raises two assignments of error, as follows:

"1. The failure of the trial court to instruct the jury on the laws relating to partnerships constitutes prejudicial and reversible error.

"2. The court erred in its failure to grant defendant's motion for new trial."

Defendant was indicted on two counts of grand theft arising out of a business arrangement he had with the complaining witness, James Eberle, the sole stockholder of the Greater Flint Car Company, which was engaged in the business of buying and selling used automobiles at wholesale in Flint, Michigan. Greater Flint Car Company was financed through Toledo Trust Company in Toledo, with a line of credit on an open-ended loan.

Defendant was engaged in the used automobile business in Toledo. Defendant and Eberle entered into a business arrangement whereby they would buy automobiles and send them to the Columbus Auto Auction to be sold. These automobiles were purchased using Greater Flint Car Company's line of credit at Toledo Trust, and Eberle authorized defendant to sign drafts on that line of credit. When he sold automobiles at the Columbus Auto Auction, defendant was to deposit the purchase-money checks into the account at Toledo Trust.

In 1981, Eberle learned that the line of credit at Toledo Trust was overdrawn, although it should have had a positive balance from the deposit of proceeds from the sale of automobiles. The first count of the indictment alleged that defendant, as representative of Greater Flint Car Company, diverted money from the sale of the automobiles into an account at Bank One in Columbus, which he opened without authorization, in the name of the Greater Flint Car Company and falsely represented himself to be sole proprietor of the company. Count two of the indictment alleged that defendant deprived Greater Flint Car Company of a 1980 Corvette, which he should have sold at the Columbus Auto Auction, but as to which he wrongfully caused title to be transferred to his own name. The jury was unable to reach a verdict with respect to the first count of the indictment but returned a guilty verdict with respect to the second count, theft of the Corvette. Thus, this appeal concerns itself only with the issue of whether or not defendant can be found guilty of theft of the Corvette if it was owned by a partnership of which he was one of the general partners. The trial court refused to instruct the jury that a partner cannot be criminally liable for theft of partnership property since he is a co-owner of it.

Defendant contends that the Ohio business transactions which gave rise to the current situation were on behalf of a partnership called the Greater Flint Car Company, of which defendant and Eberle were partners. This partnership is different from the Michigan corporation, the Greater Flint Car Company of Michigan, which is not authorized to do business in Ohio.

The second count of the indictment alleges that defendant "with purpose to deprive the owner, the Greater Flint Car Company, of property, to wit: a 1980 Chevrolet Corvette automobile, did knowingly obtain or exert control over said property beyond the scope of the express or implied consent of the Greater Flint Car Company or person authorized to give a consent, or by deception * * *." During his testimony, Eberle repeatedly referred to questions as to whether the Greater Flint Car Company, which operated in Ohio, was a partnership. While he did at one point in his testimony indicate that he did not understand the partnership reference and at another point referred to a corporation, he also testified that the corporation, Greater Flint Car Company of Michigan, was not authorized to do business in Ohio and gave no direct testimony that it did so in violation of R.C. 1703.03 and 1703.30. The line of credit was in the name of the Greater Flint Car Company with a Flint, Michigan address and with Eberle personally liable. Also there was opened by Eberle and King a checking account at the bank in the name of the Greater Flint Car Company, with the original address being a Toledo address, which was subsequently changed to the same address as used on the line of credit.

The record further indicates that the Corvette was purchased through the Columbus Fair Auto Auction by the Greater Flint Car Company. Title was taken in the name of the Greater Flint Car Company and then transferred to Car Company, Incorporated, an Ohio corporation situated in Toledo, and operated by defendant and

his brother. Car Company, Inc. then sold the vehicle to defendant for $10,000.

Whether Greater Flint Car Company is a Michigan corporation doing business in Ohio without authorization to do so, or whether it is a partnership between Eberle and defendant, the transactions outlined above with respect to the Corvette were all within the authority of defendant. He was authorized to purchase automobiles in the name of Greater Flint Car Company and was authorized to sell and transfer title to the vehicles to other dealers in Ohio, including Car Company, Inc. Failing to account for the proceeds of a sale of an automobile one is authorized to sell does not constitute theft of the automobile itself, but, rather, embezzlement of the proceeds, if that be the case.

R.C. 2913.02(A), which defendant is accused of violating, defines "theft," as follows:

"No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

"(1) Without the consent of the owner or person authorized to give consent;

"(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

"(3) By deception;

"(4) By threat."

R.C. 2913.01(D) defines "owner," as "any person, other than the actor, who is the owner of, or who has possession or control of, or any license or interest in property or services, even though such ownership, possession, control, license or interest is unlawful."

Partnership property is owned by the partners as prescribed by R.C. 1775.24 (A): "[a] partner is co-owner with his partners of specific partnership property holding as a tenant in partnership." It will be noted, however, that the tenancy is not in common but in partnership. Thus, R.C. 1775.24(B) defines the incidents of this partnership tenancy. Thus, even assuming that there may be theft of partnership property by a partner, the owner would be the partnership, not the individual partners, and the intent must be to deprive the partnership rather than the partners of the use of the property. Here the case is founded upon financial matters and deprivation of the other partner, if it be a partnership, of his partnership interest, for which defendant would be required to account by R.C. 1775.20(A). Furthermore, title to partnership property may be held in the name of only one of the partners, rather than in the partnership name, or in the name of all of the partners. See R.C. 1775.09.

Ordinarily, it has been assumed that a partner cannot be guilty of larceny of partnership property. See *Alfele* v. *Wright* (1867), 17 Ohio St. 238. Although recognizing this general rule, the court in *State* v. *Kusnick* (1888), 45 Ohio St. 535, found that a cashier employed by a business association could be convicted of embezzlement of property in his possession solely by virtue of his employment as a cashier, even though he was a part owner of the association, whether or not the association was a partnership. A similar conclusion was reached in *State* v. *Jones* (1945), 145 Ohio St. 136 [30 O.O. 337], with respect to an unincorporated association, a labor union, the court noting that by the articles of association a shareholder, as such, had no right to possession of any of the assets of the association. *Kusnick, supra,* was founded upon similar reasoning, namely, whether being part owner of the business association carries with it any right of possession of association property. See, however, R.C. 1775.24(B)(1) indicating that a partner has an equal right with the other partners to possess the specific partnership property for partnership purposes but has no right to possess it for other purposes.

The state contends that there is no evidence that a partnership existed, or that defendant acted at any time as a

partner in a partnership with Eberle. However, as we have noted above, there is ample evidence from which it could be concluded that a partnership existed. On the other hand, it would be possible to conclude that no partnership existed. In any event, the question of whether, in fact, there was a partnership, rather than some agency relationship, is an issue for the trier of the facts to determine under the total circumstances and evidence adduced. In support of this proposition, the state argues that defendant was not liable for the losses or liabilities of the alleged partnership, Greater Flint Car Company, since only Greater Flint Car Company and Eberle were named as creditors with the line of credit at Toledo Trust. However, this begs the question because, if Greater Flint Car Company is a partnership of which defendant was a partner, defendant is liable as a matter of law for the liabilities of the partnership, regardless of any arrangement between the partners for the sharing or not sharing of losses.

Thus, under the circumstances of this case, if the Greater Flint Car Company is a partnership of which defendant is a partner, his transfer of the Corvette to Car Company, Inc. would be in accordance with his authority as a partner, and he could not be criminally liable for theft of that property, even assuming he embezzled the proceeds or Car Company, Inc. did not pay for the vehicle. The trial court should have given an instruction with respect to partnership as requested by defendant since the evidence was more than sufficient to permit a finding that a partnership existed. The first assignment of error is well-taken.

The second assignment of error relates to a different basis for a new trial, namely, misconduct of the court's bailiff in communicating to the jury during the deliberations and out of the hearing of the court and the parties as to the effects and results if the jury could not agree upon a verdict. That this was improper conduct by the bailiff is virtually conceded. See R.C. 2945.33 and *State* v. *Adams* (1943), 141 Ohio St. 423 [25 O.O. 570]. Although the violation in this case was not as serious as that in *Adams,* the third paragraph of the syllabus of *Adams* holds that a violation by the bailiff of the predecessor statute of R.C. 2945.33 "will be presumed to be prejudicial to a defendant against whom, after such communication, a verdict is returned by such jury." The prosecution attempts in this case to show nonprejudice by seeking affidavits of two jurors that they had, in fact, signed a verdict upon count two prior to the improper communication by the bailiff, even though they did not return that verdict until the next day. It will be noted that the third paragraph of the syllabus of *Adams* speaks in terms of return of verdict, not reaching a verdict or signing of the verdict. Also, the first paragraph of the syllabus of *Adams* criticizes the very type of affidavit obtained by the prosecution herein as to the conduct of deliberations of the jury and not misconduct of the court official. The rule of *Adams* permitting such affidavits is limited to those showing misconduct by the court official but makes no exception with respect to the invasion of the secrecy of the jury's proceedings during deliberation not involving misconduct of a court official. Here, the misconduct was demonstrated by evidence *aliunde* since the bailiff's communication to the jury occurred outside the jury room in an elevator during a recess during deliberations.

Even assuming that we properly could consider the affidavit of two jurors that they had signed a verdict with respect to count one prior to the communication, a verdict is not final until returned and accepted by the court. Even though the jury may have tentatively reached a conclusion with respect to the second count, one or more of the jurors could have changed their minds, because of the difficulty in reaching an agreement

on the first count. In any event, as the court noted in *Adams*, prejudice is presumed, and the state has not overcome that presumption, even assuming it to be rebuttable, by the type of evidence that it presented, which does little to dilute the presumed prejudice. The second assignment of error is well-taken.

For the foregoing reasons, both assignments of error are sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to the court for a new trial.

*Judgment reversed and cause remanded.*

REILLY and McCORMAC, JJ., concur.