[No. D022768. Fourth Dist., Div. One. Jan. 30, 1996.]

In re MEAGAN R., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
MEAGAN R., Defendant and Appellant.

## COUNSEL

Cynthia M. Sorman, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Janelle B. Davis and Vincent L. Rabago, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WORK, Acting P. J.**—Meagan R. appeals a judgment entered on juvenile court true findings she had committed burglary (Pen. Code,[1] § 459) and misdemeanor vandalism (§ 594, subds. (a), (b)(4)). She challenges the burglary finding predicated upon a finding she entered a residence with the intent to aid and abet her own statutory rape, a theory not charged in the Welfare and Institutions Code section 602 petition. As we shall explain, we conclude Meagan correctly asserts her liability for aiding and abetting her own statutory rape is precluded as a matter of law and thus she could not harbor the necessary culpable state of mind required to be guilty of burglary.

---

[1]All statutory references are to the Penal Code unless otherwise specified.

Accordingly, we reverse that portion of the judgment.[2] In all other respects, we affirm the judgment.

## Factual and Procedural Background

Joani Rodriguez left her apartment on Montecita Road in Ramona at 11:30 a.m., after locking the door and securing the windows. Upon her return three days later, she found her home vandalized, the front window screen bent and the window open. Bleach had been poured over the carpets and furniture, food was strewn on the floor and her furniture had been slashed. Her cable television box, clock, perfume, tweezers and three pairs of socks were missing. Her remote control for the cable box was destroyed. She found a letter on her bed which read: "Thank you for the use of your bed. Meagan and Oscar." She knew no one named Meagan, nor did she ever give consent for this person to be in her apartment.[3]

Joani showed Desire Renfro, a neighbor, her damaged apartment and the note on the bed. Renfro recognized the handwriting on the note as that of Meagan from her computer class. Renfro saw Meagan in school and asked whether she knew Oscar and Joani. She replied she did, admitting she had poured bleach all over Joani's apartment and she and Oscar had sex in Joani's bed. Meagan explained to Renfro they went inside and were paying Joani back because she had cheated on Oscar. Renfro related this conversation to Joani and they took the information to San Diego County Sheriff Deputy Michael Casey.

During an interview at Olive Pierce Elementary Junior High School, the 14-year-old Meagan told Casey she entered the apartment with Oscar after Oscar removed a screen, opened a window next to the front door and then opened the door from the inside. She said Oscar had written the note and she merely signed it; however, she later admitted she wrote the note at Oscar's

---

[2] In light of our disposition, we do not address her remaining contentions the evidence is insufficient to sustain a finding she committed burglary; she was denied due process of law when the Welfare and Institutions Code section 602 petition failed to provide adequate notice the juvenile court would rely upon unlawful sexual intercourse with a minor as the predicate felony for the burglary charge denying her a fair opportunity to adequately prepare and present a defense directed to that allegation; and she was denied effective assistance of counsel when her trial attorney was rendered ineffective due to the lack of notice regarding the theory upon which the juvenile court would find the predicate felony necessary for the burglary.

[3] Oscar Rodriguez was Joani's ex-boyfriend. She had changed her name to Rodriguez because the two were engaged at one time. Although he did not live with her, he visited her and kept some clothing at her house. Apparently, she had permitted him to come in the house when she was there. He did not have a key. Their relationship dissolved when he went to prison in January 1991. She filed for a restraining order against him after his release in August 1994.

direction. She further told Casey that when she walked into the apartment, the vandalism had already taken place. While there, Oscar showed her some socks, telling her he had given the socks to Joani and asked her if she wanted them. She said she did, so Oscar placed the socks in a knapsack and they removed them from the apartment.[4]

A Welfare and Institutions Code section 602 petition charged Meagan with unlawfully entering the residence of Joani with the intent to commit theft; misdemeanor trespassing (§ 602, subd. (j)); and misdemeanor vandalism of property valued at less than $1,000 (§ 594, subds. (a), (b)(4)).[5] An unsuccessful defense motion pursuant to Welfare and Institutions Code section 707.1 was made on the ground there was insufficient evidence of any intent to commit a theft at the time of entry. On December 8, the juvenile court found true the allegations Meagan had committed burglary and vandalized property valued at less than $1,000. As to the burglary count, the court found she had entered Joani's residence with the intent to commit a felony, not theft. The court reasoned if she facilitated Oscar's commission of statutory rape, she aided and abetted her statutory rape. The court thus found she committed residential burglary by entering the residence with the intent to perpetrate or aid and abet her own statutory rape.

*The Burglary Finding Cannot Be Sustained on the Theory Meagan Entered the Residence With the Intent to Aid and Abet Her Own Statutory Rape*

For Meagan to be guilty of burglary, she must have harbored the intent to commit either theft or a felony upon unlawful entry, a felony which she has the capacity to commit. Given she cannot be liable as either an aider or abettor or coconspirator to the crime of her own statutory rape, she cannot

---

[4]At the contested hearing, Meagan testified she met Oscar on August 23 at a friend's house. He told her he was 20 years old, but she later discovered he was, in fact, 22 years old. Oscar told her he lived at that apartment (Joani's) and she went there with him. Before they entered, she testified he told her to write a note and, although it was stupid to do so, she wrote it. She acknowledged he gained entry to the apartment by opening the window by the front door and unlocking the door, then opening it. Upon entering, Oscar told her he had done the vandalism and she responded that he was "sick" and she left. She did not see Oscar steal anything. She denied committing any of the vandalism. She stated she never had the intent to steal anything. In fact, she denied she took the socks from the apartment, explaining Oscar brought the socks to her house and asked her if she wanted them. When she replied no, he gave them to her anyway and she threw them at him. She further stated Oscar had told her he had purchased all the items in the apartment and Joani was "messing around" behind his back. Therefore, he destroyed all the items he had purchased for her. Finally, she denied telling Casey she had lain on the bed with Oscar.

[5]On November 18, an amended petition was filed, adding petty theft (§ 488) and defacing the property of Joani valued in excess of $1,000, but less than $5,000 (§ 594, subds. (a), (b)(4)). Meagan was not arraigned on the amended petition, as the court proceeded on the first petition.

be guilty of burglary based on a building entry for the purpose of engaging in consensual sexual intercourse.

Burglary involves the act of unlawful entry accompanied by the specific intent to commit grand or petit larceny or any felony. (*People* v. *Montoya* (1994) 7 Cal.4th 1027, 1041 [31 Cal.Rptr.2d 128, 874 P.2d 903]; § 459.) The People stress liability for burglary upon entry with the requisite intent to commit a felony or a theft is unaffected by whether the felony or theft actually committed is different from that originally contemplated at the time of entry or whether any felony or theft actually is committed. (7 Cal.4th at pp. 1041-1042.) However true that proposition, it is not relevant here where there is no evidence Meagan intended to commit any act for which she could be criminally liable under section 261.5, at the time of her unauthorized entry.

■ " 'Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence. The laws are primarily designed, then, not to deter the trespass and the intended crime, which are prohibited by other laws, so much as to forestall the germination of a situation dangerous to personal safety.' Section 459, in short, is aimed at the danger caused by the unauthorized entry itself." (*People* v. *Gauze* (1975) 15 Cal.3d 709, 715 [125 Cal.Rptr. 773, 542 P.2d 1365], quoting *People* v. *Lewis* (1969) 274 Cal.App.2d 912, 920 [79 Cal.Rptr. 650]; *People* v. *Montoya, supra,* 7 Cal.4th at p. 1042.)

■ Common sense dictates ". . . an aider and abettor must have criminal intent in order to be convicted of a criminal offense." (*People* v. *Beeman* (1984) 35 Cal.3d 547, 556 [199 Cal.Rptr. 60, 674 P.2d 1318].) The burden of proof on the prosecution is to show a defendant, as an aider and abettor, acted with knowledge of the criminal purpose of the perpetrator and with an intent or purpose either of committing, encouraging, or facilitating commission of the target offense. (*Id.* at p. 560.) "[A]n aider and abettor will 'share' the perpetrator's specific intent when he or she knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime. [Citations.] The liability of an aider and abettor extends also to the natural and reasonable consequences of the acts he knowingly and intentionally aids and encourages. [Citation.]" (*Ibid.*) Consequently, "[i]t follows that a defendant whose liability is predicated on his status as an aider and abettor need not have intended to encourage or facilitate the particular offense ultimately

committed by the perpetrator. His knowledge that an act which is criminal was intended, and his action taken with the intent that the act be encouraged or facilitated, are sufficient to impose liability on him for any reasonably foreseeable offense committed as a consequence by the perpetrator. It is the intent to encourage and bring about conduct that is criminal, not the specific intent that is an element of the target offense, which *Beeman* holds must be found by the jury. [Citation.]" (*People* v. *Croy* (1985) 41 Cal.3d 1, 12, fn. 5 [221 Cal.Rptr. 592, 710 P.2d 392]; *People* v. *Montoya, supra,* 7 Cal.4th at p. 1044.) Under section 31, as a principal, an aider and abettor has the same culpability and suffers the same punishment as the perpetrator who directly commits the crime. "This doctrine snares all who intentionally contribute to the accomplishment of a crime in the net of criminal liability defined by the crime, even though the actor does not personally engage in all of the elements of the crime." (*People* v. *Brady* (1987) 190 Cal.App.3d 124, 132 [235 Cal.Rptr. 248], disapproved on other grounds in *People* v. *Montoya, supra,* 7 Cal.4th at p. 1040.)

The People wrongly assert because Meagan's liability for aiding and abetting unlawful sexual intercourse is not precluded, she could have the requisite intent to aid and abet the commission of unlawful sexual intercourse. The People acknowledge the English authority, *The Queen* v. *Tyrrell* (1893) 1 Q.B. 710, holding it was not criminal for a minor female to aid and abet a male in having unlawful sexual intercourse with her. The court reasoned the law was designed to protect women and girls against themselves and it would be nearly impossible to obtain convictions if women or girls were also brought within the scope of the law. (*Id.* at p. 712.) The court further reasoned that by legislative design (the absence of any intent to treat the female as a criminal) young females were omitted from operation of the statute and potential criminal liability. (*Id.* at pp. 712-713.) The progeny of this English authority includes the United States Supreme Court's decision in *Gebardi* v. *United States* (1932) 287 U.S. 112, 123 [77 L.Ed. 206, 211-212, 53 S.Ct. 35, 84 A.L.R. 370], holding a woman who simply consents to be transported across the state line for the purpose of engaging in sexual intercourse is not a coconspirator to violate the Mann Act (18 U.S.C. § 2421 et seq.). The court rested its decision "upon the ground that we perceive in the failure of the Mann Act to condemn the woman's participation in those transportations which are effected with her mere consent, evidence of an affirmative legislative policy to leave her acquiescence unpunished. We think it a necessary implication of that policy that when the Mann Act and the conspiracy statute came to be construed together, as they necessarily would be, the same participation which the former contemplates as an inseparable incident of all cases in which the woman is a voluntary agent at all, but does not punish, was not automatically

to be made punishable under the latter. It would contravene that policy to hold that the very passage of the Mann Act effected a withdrawal by the conspiracy statute of that immunity which the Mann Act itself confers." (*Gebardi* v. *United States, supra,* 287 U.S. at p. 123 [77 L.Ed. at pp. 211-212].) Similarly, our Supreme Court in *In re Cooper* (1912) 162 Cal. 81, 85 [121 P. 318], rejected the state's argument an unmarried woman, although not guilty herself of adultery, was nevertheless a principal in that crime by her participation in the illicit intercourse when she willfully and knowingly aided and abetted her married codefendant in the commission of the offense. The court relied on the legislative design of the statute which made her participation neither criminal nor punishable, concluding an unmarried participant cannot be held, merely by reason of her participation, to be guilty as an aider and abettor if the statute by its express terms exclude the possibility both parties are to be punished. (*Id.* at p. 86.)[6]

■    Within the context of being an aider or abettor, the foregoing authority establishes a rule that where the Legislature has dealt with crimes which necessarily involve the joint action of two or more persons, and where no punishment at all is provided for the conduct, or misconduct, of one of the participants, the party whose participation is not denounced by statute cannot be charged with criminal conduct on either a conspiracy or aiding and abetting theory. (*Williams* v. *Superior Court, supra,* 30 Cal.App.3d at p. 15.) So, although generally a defendant may be liable to prosecution for conspiracy as an aider and abettor to commit a crime even though he or she is incapable of committing the crime itself, the rule does not apply where the statute defining the substantive offense discloses an affirmative legislative policy the conduct of one of the parties shall go unpunished. (*People* v. *Buffum, supra,* 40 Cal.2d at p. 722.) Moreover, when the Legislature has imposed criminal penalties to protect a specific class of individuals, "it can hardly have meant that a member of that very class should be punishable

---

[6]In *People* v. *Buffum* (1953) 40 Cal.2d 709, 722 [256 P.2d 317], the Supreme Court cited *Gebardi* v. *United States, supra,* 287 U.S. 112, when confronted by the issue of whether four women who submitted to abortions were either accomplices of or coconspirators with defendants who allegedly conspired to perform abortions. The women were subject to prosecution under former section 275, which provided for a penalty of from one to five years. The defendant doctors were charged with conspiracy to violate former section 274, that is performing abortions, with a penalty of two to five years. The court rejected any conspiracy theory of violating former section 274, reasoning: "In our opinion the same reasoning which precludes the application of section 31 for the purpose of prosecuting a woman as a principal under section 274 likewise precludes the use of section 182 in prosecuting her for conspiracy to violate section 274. Since, as held in the *Clapp* [*People* v. *Clapp* (1944) 24 Cal.2d 835 (151 P.2d 237)] case, the Legislature has expressed an intent that a woman who consents and voluntarily submits to an abortion is not punishable under section 274, it clearly did not intend that she should be punished for conspiracy to violate that statute." (*People* v. *Buffum, supra,* 40 Cal.2d at p. 722; see also *Williams* v. *Superior Court* (1973) 30 Cal.App.3d 8, 12-15 [106 Cal.Rptr. 89].)

either as an aider or abettor or as a co-conspirator." (*United States* v. *Annunziato* (2d Cir. 1961) 293 F.2d 373, 379, fn. omitted.)

■■■ Under section 261.5[7] and the surrounding circumstances here, Meagan was the protected victim under section 261.5, a provision designed to criminalize the exploitation of children rather than to penalize the children themselves. (See *Application of Balucan* (1960) 44 Hawaii 271 [353 P.2d 631, 637]; *State* v. *David* (1954) 226 La. 268 [76 So.2d 1, 2].) The underlying legislative intent of section 261.5 has been described as follows: "Above and beyond the protection afforded to all victims of sexual assault, the Legislature has determined that children are uniquely susceptible to 'outrage' and exploitation. Hence, special laws on the subject of sex with children have been enacted. They expand the kinds of acts which may be deemed criminal sexual misconduct, and they generally operate without regard to force, fear, or consent. (See, e.g., [§ ]261.5 [sexual intercourse with nonspouse under 18] . . . .)" (*People* v. *Scott* (1994) 9 Cal.4th 331, 341-342 [36 Cal.Rptr.2d 627, 885 P.2d 1040].) A ruling to the contrary that a child could be held responsible on a theory of aiding and abetting for violating such a statute would be contrary to express legislative intent.[8] Consequently, Meagan, as the victim of the statutory rape, cannot be prosecuted on that charge, regardless whether her culpability be predicated upon being a coconspirator, an aider and abettor or an accomplice given her legislatively protected status.

Accordingly, given that Meagan under the circumstances of this case was the victim of statutory rape under section 261.5, the juvenile court cannot rely on that crime to serve as the predicate felony in a true finding she

---

[7]Section 261.5 provides:

"(a) Unlawful sexual intercourse is an act of sexual intercourse accomplished with a person who is not the spouse of the perpetrator, if the person is a minor. For the purposes of this section, a 'minor' is a person under the age of 18 years.

"(b) Any person who engages in an act of unlawful sexual intercourse with a minor who is not more than three years older or three years younger than the perpetrator, is guilty of a misdemeanor.

"(c) Any person who engages in an act of unlawful sexual intercourse with a minor who is more than three years younger than the perpetrator is guilty of either a misdemeanor or a felony, and shall be punished by imprisonment in a county jail not exceeding one year, or by imprisonment in the state prison.

"(d) Any person over the age of 21 years who engages in an act of unlawful sexual intercourse with a minor who is under 16 years of age is guilty of either a misdemeanor or a felony, and shall be punished by imprisonment in a county jail not exceeding one year, or by imprisonment in the state prison for two, three, or four years."

[8]Indeed, as a practical matter, such a rule would eliminate criminal prosecutions for violations of the statute. Confronted by the possibility of criminal prosecution predicated upon vicarious liability, it is doubtful a minor victim of a violation of the statute would be likely to report the offense to authorities.

committed burglary. When she entered Joani's residence, she had no pun-
ishable intent, for she did not have the culpable state of mind required for
burglary. Because she could not intend to aid and abet her own statutory
rape, she did not enter the residence with the intent to commit that felony
therein. While Meagan may have entered the residence with the intent to
have sex, she could not commit a felony if she completed that act.

The burglary statutes endeavor to punish only those persons who enter a
residence with specific culpable intent. All other nonconsensual entries may
be punishable by other criminal statutes, but they are not burglaries. As
emphasized by the People, what is being punished by the burglary laws is
not simply the entry, but the nonconsensual nature of it by one without a
possessory right to enter who has a certain culpable state of mind. Because
Meagan legally could not aid and abet her own statutory rape, she could not
harbor the necessary culpable state of mind required to be liable for burglary
on these facts.

The case law relied upon by the People for the proposition Meagan could
be criminally liable for aiding and abetting unlawful sexual intercourse
despite her potential legal incapacity to personally commit the offense is
without exception inapposite. Each case advanced by the People involve
persons who were not intended victims of the statutes they were held liable
for violating. (See *People* v. *Wallin* (1948) 32 Cal.2d 803, 806-807 [197 P.2d
734]; *Matter of Application of Kantrowitz* (1914) 24 Cal.App. 203 [140 P.
1078] [while husband was not legally capable of raping his own wife, he was
liable as an aider and abettor]; *People* v. *Anderson* (1925) 75 Cal.App. 365
[242 P. 906], disapproved on other grounds in *In re Wright* (1967) 65 Cal.2d
650, 654-655 [56 Cal.Rptr. 110, 422 P.2d 998] [person was not an executive
officer found guilty of aiding and abetting offense that defined perpetrators
as executive officers]; *People* v. *Fronk* (1927) 82 Cal.App. 465, 468-469
[255 P. 777] [embezzlement]; *People* v. *Kelly* (1924) 69 Cal.App. 558,
568-569 [231 P. 767]; *Hutchins* v. *Municipal Court* (1976) 61 Cal.App.3d 77,
83 [132 Cal.Rptr. 158] [an attorney held liable for conspiring with and
aiding and abetting illegal "cappers"].)[9] Similarly, the People's reliance on
case precedent for the proposition section 261.5 has been interpreted to
include defendants considered incapable of perpetrating the offense is mis-
placed, because neither the parties nor this court has found case law holding

[9]The People also rely on *People* v. *Young* (1933) 132 Cal.App. 770, 772 [23 P.2d 524],
where the court held a female could be held liable for assisting a male in violating the penal
statutes prohibiting pimping. However, the female charged in *Young* was not the intended
victim of the statute. Moreover, in *Williams* v. *Superior Court, supra,* 30 Cal.App.3d at page
14, the court held the act of prostitution could not be elevated from a simple misdemeanor to
a felony by charging the prostitute with conspiring with her pimp, since the prostitute was
liable for an act under a more specific statute.

the victim of the protected class within section 261.5 could be liable for violating the felony provisions of that section.[10] Finally, the People's reliance on a series of cases for the proposition a minor can be held criminally liable for violating a statute designed to protect minors is similarly misplaced, and not helpful here. (See *Planned Parenthood Affiliates* v. *Van de Kamp* (1986) 181 Cal.App.3d 245, 274 [226 Cal.Rptr. 361]; *In re Gladys R.* (1970) 1 Cal.3d 855, 869 [83 Cal.Rptr. 671, 464 P.2d 127]; *In re John L.* (1989) 209 Cal.App.3d 1137, 1138, 1141 [257 Cal.Rptr. 682]; *In re Billie Y.* (1990) 220 Cal.App.3d 127, 129, 132 [269 Cal.Rptr. 212], disapproved on other grounds in *In re Manuel L.* (1994) 7 Cal.4th 229, 239, fn. 5 [27 Cal.Rptr.2d 2, 865 P.2d 718].) These cases are precisely inapposite for the reason stated by the People in that they involve minors committing crimes against other minors, victims who fall within the protected class of the statutory provision involved.

In summary, although we grant Meagan was not the member of a protected class with regard to the burglary offense of which she was convicted, she was the intended and protected victim of the predicate felony used by the court to support the burglary finding. As such, she cannot harbor the culpable state of mind necessary to commit the burglary, because under any theory she cannot commit the crime of her own statutory rape. Consequently, the burglary true finding must be reversed.

## DISPOSITION

The judgment is reversed in part as to the true finding regarding the burglary. In all other respects, the judgment is affirmed.

Huffman, J., and Haller, J., concurred.

---

[10]Before section 261.5 was amended in 1993, only males were defined as perpetrators. (*Michael M.* v. *Superior Court* (1979) 25 Cal.3d 608, 611 [159 Cal.Rptr. 340, 601 P.2d 572], affirmed on other grounds, *Michael M.* v. *Superior Court* (1981) 450 U.S. 464 [67 L.Ed.2d 437, 101 S.Ct. 1200].) However, relying on *People* v. *Haywood* (1955) 131 Cal.App.2d 259 [280 P.2d 180], and *People* v. *Bartol* (1914) 24 Cal.App. 659 [142 P. 510], the People assert that before the amendment women were criminally liable for aiding and abetting statutory rape. Although the statement is accurate in the general context, the People's reliance on it is misplaced because the mothers who facilitated the statutory rapes in *Haywood* and *Bartol* were clearly not the protected victims of the statutory rape provisions.