**The STATE of Ohio, Appellee,**

**v.**

**LUCAS, Appellant.***

Court of Appeals of Ohio,
Fifth District, Licking County.

No. 01CA00100.

Decided April 25, 2002.

Elena V. Tuhy, Assistant Law Director, for appellee.

Andrew T. Sanderson, for appellant.

WILLIAM B. HOFFMAN, Presiding Judge.

{¶ 1} Defendant-appellant Betty S. Lucas appeals from her conviction and sentence on one count of complicity to violate a protection order entered by the Licking County Municipal Court, following the trial court's finding appellant guilty after she pleaded no contest.[1] Plaintiff-appellee is the state of Ohio.

---

* Reporter's Note: A certified conflict was accepted in 96 Ohio St.3d 1465, 2002-Ohio-3910, 772 N.E.2d 1202.

1. Appellant was also convicted and sentenced on one count of domestic violence; however, this count is not subject to this appeal.

## STATEMENT OF THE FACTS AND CASE

{¶ 2} On May 23, 2001, appellant was charged with one count of domestic violence and one count of complicity to violate a protection order. The charges arose out of a May 10, 2001 incident at appellant's home, which involved appellant's ex-husband, Joseph Lucas. Appellant had invited Lucas to her home for the birthday celebration of one of their children. Appellant and Lucas consumed alcoholic beverages together and, at some point during the day, appellant and Lucas argued and engaged in a physical altercation. At the time, a temporary protection order against Lucas was in effect for appellant's protection. The protection order prohibited Lucas from having any contact with appellant.

{¶ 3} On June 12, 2001, appellant filed a motion to dismiss the complicity charge. Via judgment entry filed June 28, 2001, the trial court denied appellant's motion. Appellant entered a plea of no contest to the complicity charge and a plea of guilty to the domestic violence charge on August 8, 2001. The trial court found appellant guilty of both offenses, sentenced her to ninety days in jail on each charge, but suspended the time and placed her on probation for a period of two years.

{¶ 4} It is from the conviction and sentence on the complicity charge appellant appeals, raising the following assignment of error:

{¶ 5} "The trial court committed harmful error in convicting the defendant-appellant of the offense of complicity to violating a protection order."

### I

{¶ 6} In her sole assignment of error, appellant maintains that the trial court erred in convicting her of complicity to violating a protection order. Specifically, appellant submits, as the victim of the protection order, she is a member of a protected class; therefore, the prosecution and conviction of a victim counters the intent of the General Assembly.

{¶ 7} In support of her position appellant relies upon *N. Olmsted v. Bullington.*[2]

{¶ 8} The *Bullington* court addressed the issue of whether a city may prosecute a domestic violence victim for aiding and abetting an offender in the violation of a temporary protection order, which was issued for the victim's protection and restrained the offender from contact with the victim.[3] The Eighth District answered the question in the negative, utilizing a public-policy analysis

---

2. *N. Olmsted v. Bullington* (2000), 139 Ohio App.3d 565, 744 N.E.2d 1225.

3. Id. at 566, 744 N.E.2d 1225.

rather than analyzing the depth of the complicity laws. The *Bullington* court stated:

{¶ 9} "The Ohio Supreme Court has recognized that domestic violence laws are special. *State v. Williams* (1997), 79 Ohio St.3d 459, 683 N.E.2d 1126. The issuance of a TPO is special under that law. The TPO is specific to the offender and defines specifically the forbidden, proscribed, and prohibited conduct of the offender. When the General Assembly enacted this law, it clearly intended that the victim could not by his or her action alter the effect of the law. The General Assembly intended that no victim could waive the effects of the TPO. To sanction what the city attempted to do here would in effect counter the General Assembly's intent that the TPO cannot be altered or waived. See *Reynoldsburg v. Eichenberger* (Apr. 18, 1990), Licking App. No. CA–3492, unreported, 1990 WL 52467 * * * (wife could not consent to husband's return to the house after a TPO had been issued).

{¶ 10} "Moreover, by placing specific nonwaivability language in the law, the General Assembly recognized that sometimes whether volitional or under duress, the victim might allow the offender access to his or her person. Because of this possibility, the General Assembly made the law nonwaivable. The purpose was to protect the victim, which sometimes means protecting the victim from the victim's own actions or behavior.

{¶ 11} "Additionally, in so doing, the General Assembly focused absolutely on the behavior of the offender with intent to punish the offender's behavior and not the behavior of the victim, whom the order is designed to protect. To do otherwise would make [the victim] responsible for [the offender's] action. The TPO restrains his behavior and makes him responsible for his own behavior. * * * The TPO targets the offender's behavior, not the victim's."

{¶ 12} The court proceeded to discuss the case of *People v. Meagan R.*,[4] which it found to be analogous. The *Meagan R.* case addressed the issue of whether a minor could aid and abet in her own statutory rape.[5] The California appellate court, reversing the minor defendant's burglary conviction which was predicated on the felony of statutory rape, reasoned that "an aider and abetter must have the necessary criminal intent to commit the offense."[6] Further, "the

---

4. *People v. Meagan R.* (1996), 42 Cal.App.4th 17, 49 Cal.Rptr.2d 325.

5. *N. Olmsted v. Bullington*, supra, at 570, 744 N.E.2d 1225.

6. *N. Olmsted v. Bullington*, supra, referring to *People v. Meagan R.*, supra, at 27, 49 Cal.Rptr.2d 325.

court held that a victim who is a member of a protected class of a criminal law may not be charged with violating a provision of that criminal law."[7]

{¶ 13} The *Bullington* court concluded:

{¶ 14} "Here, the victim of a TPO is a member of the protected class designated for protection from violent abusers. Consequently, the victim may not be charged as an aider and abetter in the violation of a TPO by an offender.

{¶ 15} "It appears to us that the city showed a certain degree of impatience with the victim in this case, and the arresting officer attempted to make the victim responsible for the offender's behavior. The city is obviously concerned about this issue. However, we believe this is not the way to solve its perceived or imagined problems. The protection order is targeted for a specific offender for that offender's behavior at the time of its issuance. Neither the city nor police officers may alter those facts to fit a particular bias or assumption.

{¶ 16} "Additionally, any number of reasons may exist for a victim's being in the offender's presence. Many of these reasons may not be volitional, even though they may appear on the surface to be so. Consequently, to allow the city to focus on the victim's behavior abrogates the General Assembly's historical efforts to require police officers to turn their attention from the victim's actions and place their attention squarely where it belongs, on the offender's behavior. Accordingly, we hold as a matter of law that the trial court correctly dismissed the complaint * * *."[8]

{¶ 17} Although we do not disagree with the Eighth District's recitation of the General Assembly's purpose enacting temporary protection laws, we disagree with the court's conclusion that the victim of domestic violence cannot be charged as an aider and abetter in the violation of a protection order by an offender because the victim is a member of a protected class. Our reasons follow.

{¶ 18} R.C. 2923.03(A)(2), the complicity statute, provides that "[n]o person, acting with the kind of culpability required for the commission of an offense * * * shall aid or abet another in committing the offense." R.C. 2919.27(A)(1) states that no person shall recklessly violate the terms of a protection order issued pursuant to R.C. 2919.26 or 3113.31.

{¶ 19} In order to find appellant guilty of complicity, we must determine whether appellant acted "recklessly." "Recklessly" is defined as follows:

{¶ 20} "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to

---

7. Id.

8. *Bullington,* supra, at 571, 744 N.E.2d 1225.

cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."[9]

{¶ 21} In the instant action, we find that appellant's mental state went beyond "reckless" to the point of intentional. Unlike the victim of a statutory rape, who is automatically protected as a result of his or her age, the victim of a protection order asks for the protection. A victim is not a protected person under the laws authorizing the issuance of protective orders merely by his or her existence, but rather the status is achieved through a formal request to the trial court. We cannot agree with the *Bullington* court's public-policy rational, as it becomes overreaching when the victim, such as appellant herein, requested the protection order and then recklessly exposed herself to the offender from whom she had sought protection.

{¶ 22} Accordingly, appellant's sole assignment of error is overruled.

{¶ 23} The judgment of the Licking County Municipal Court is affirmed.

Judgment affirmed.

FARMER and BOGGINS, JJ., concur.

---

9. R.C. 2901.22(C).