201 P.3d 315 (2009)
CITY OF AUBURN, Petitioner,
v.
Teresa A. HEDLUND, Respondent.
No. 80110-0.
Supreme Court of Washington, En Banc.
Argued May 15, 2008.
Decided February 12, 2009.
*316 Daniel Brian Heid, City of Auburn, Auburn, WA, for Petitioner.
Matthew Valen Honeywell, Attorney at Law, Seattle, WA, for Respondent.
CHAMBERS, J.
¶ 1 Under Washington statutes, a person is not an accomplice to a crime if she is a victim of that same crime. Teresa Hedlund hosted a party where the liquor flowed freely. Following the party, Hedlund was the only survivor of a single car accident. Hedlund was seriously injured herself. She was charged in Auburn Municipal Court with (among other things) being an accomplice to driving under the influence (DUI) and reckless driving. At the close of the city of Auburn's case in chief, the trial court dismissed the DUI and reckless driving charges because a victim may not be charged as an accomplice under RCW 9A.08.020. We recognize that the legislature may have intended a more limited application of the statute, but based upon the plain language of the law, we agree with the municipal court judge and the Court of Appeals that Hedlund cannot be prosecuted as an accomplice. We affirm the Court of Appeals in part.

FACTS AND PROCEDURAL HISTORY
¶ 2 On July 16, 2001, a Ford Escort smashed into a concrete pillar in Auburn, killing the driver and five of the six passengers. Earlier in the evening, all the occupants of the car had been at a party at the apartment Hedlund shared with her mother, fiancé, and daughter. Hedlund was 28 at the time; the guests were between 17 and 22. Hedlund's four-year-old daughter was also present. One of the guests had brought a video camera, which was passed around to record the festivities. Most of those present, including the 17-year-old, were drinking alcohol and performing for the video camera. Hedlund's four-year-old daughter is also on camera with a lighted cigarette, dancing and performing at her mother's encouragement. Hedlund is heard asking her daughter to get the cigarettes, telling everyone to look at her daughter, and telling the girl to "shake your moneymaker." Clerk's Papers (CP) at 1188-89. At one point on the video, the four-year-old turns around, pulls down her pajamas, and bares her buttocks for the camera.
¶ 3 When Hedlund's mother came home, she threw the partyers out. Seven people squeezed into the two-door Ford Escort with *317 four seat belts and the back window broken out. Jayme, the owner of the car and the only sober guest, was one of the two smallest people. She sat on someone's lap in the backseat. Also in the backseat were Hedlund's fiancé, Tim, and their friends Marcus, Brandon, and April, the 17-year-old who was carried[1] unconscious into the car. At the wheel was Tim's twin brother Tom, who was heard earlier on the videotape declaring how "liquored up" he was. CP at 543, 1189.
¶ 4 No one saw the collision, but the events inside the car were preserved on the video camera. During the drive, Hedlund was in the front passenger seat, on her knees, facing the rear of the car, filming. The sober Jayme repeatedly screamed at Tom to slow down. When Hedlund asked Jayme if she wanted her (Hedlund) to drive instead of Tom, Jayme replied that she wanted Tom to stop the car. Hedlund said that Tom was only being funny. Tom then declared, "I'm going to kill us all right now." Seconds later, everyone but Hedlund was dead. Yaw marks on the pavement, together with the video, suggested that Tom put the car into a slide to scare his passengers, lost control, and hit the concrete pillar. The police determined the crash was caused by excessive speed and recklessness. Postmortem blood alcohol tests showed everyone but Jayme had been drinking and the driver's blood alcohol was at nearly twice the legal limit. Hedlund spent months in hospitals and rehabilitation as a result of the wreck.
¶ 5 The King County prosecutor declined to charge Hedlund and instead referred the case to the Auburn city attorney. The city charged Hedlund with DUI and reckless driving as an accomplice and with furnishing alcohol to minors. CP at 680-86.[2] After reviewing the videotape, the city added a charge of furnishing tobacco to a minor. See RCW 46.61.500 (reckless driving); RCW 46.61.502 (driving under the influence); RCW 66.44.270 (furnishing alcohol to a minor); RCW 26.28.080 (furnishing tobacco to a minor). The city's theory was that all evening, the camera was used to encourage inappropriate behavior and "showboating," which continued in the car because Hedlund kept filming. CP at 699-701, 716-17, 763. Hedlund unsuccessfully moved to sever the furnishing tobacco charge from the DUI, reckless driving, and furnishing alcohol charges.
¶ 6 The case was tried to a jury. At the end of the city's case in chief, the trial judge reluctantly granted Hedlund's motion to dismiss the reckless driving and DUI charges because "there's no way [the jury] could conclude that she was not also a victim." CP at 598. The city sought a writ of review to the superior court. Judge Cayce concluded that the statute, preventing a victim from being prosecuted as an accomplice, applied only to crimes that required a victim. He further concluded that because DUI and reckless driving do not require an injured victim, Hedlund was a victim of vehicular assault, not DUI or reckless driving. The court also rejected Hedlund's argument that continuation of the trial after the municipal court's dismissal would violate double jeopardy. Hedlund's appeal was stayed pending the lower court's proceedings.
¶ 7 The Auburn Municipal Court trial proceeded, and the jury found Hedlund guilty of all charges except reckless driving. Hedlund sought a RALJ appeal. Superior Court Judge Roberts reversed all of the convictions because of cumulative errors. The city's appeal of that decision was consolidated with Hedlund's earlier appeal of the writ of review. City of Auburn v. Hedlund, 137 Wash. App. 494, 497, 155 P.3d 149 (2007). Division One of the Court of Appeals affirmed the reversal of the DUI conviction, concluding Hedlund was a victim of that crime. Id. at 503, 155 P.3d 149. It also held that double jeopardy barred reinstating the DUI charge after it had been dismissed and that the city's cross appeal of the trial errors was moot. Id. at 506, 155 P.3d 149.

*318 ACCOMPLICE LIABILITY
¶ 8 We review questions of statutory interpretation de novo. Castro v. Stanwood Sch. Dist. No. 401, 151 Wash.2d 221, 224, 86 P.3d 1166 (2004). Under Washington law, "[u]nless otherwise provided by this title or by the law defining the crime, a person is not an accomplice in a crime committed by another person if: (a) He is a victim of that crime." RCW 9A.08.020(5). The word "victim" is not specifically defined anywhere in the Washington Criminal Code, Title 9A RCW, or in Washington motor vehicle statutes, Title 46 RCW. Unrelated laws, such as the Sentencing Reform Act of 1981 (chapter 9.94A RCW) and the crime victims' compensation act (chapter 7.68 RCW) are in accord with the common understanding that a "victim" is a person who suffers injury as a direct result of a crime. See RCW 9.94A.030(46); RCW 7.68.020(3);[3] WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 1286 (1984) ("One harmed or killed by another."); cf. BLACK'S LAW DICTIONARY 1598 (8th ed.2004) ("[a] person harmed by a crime, tort, or other wrong").
¶ 9 The city argues the legislature simply could not have intended that anyone injured in a crime is absolved of accomplice liability. The city argues the statute does not apply because Hedlund was not yet a victim at the time she committed the acts, making her an accomplice to DUI. It notes the statute reads, "is a victim" not "LATER BECOMES A VICTIM." Revised Opening Br. of Resp't/Cross-Appellant at 9; see RCW 9A.08.020(5). We decline the city's invitation to so define "victim." This interpretation would render the statute meaningless because many accomplices provide assistance before a crime and many victims cannot be defined as such until the crime is complete. Additionally, Hedlund's alleged encouragement of the DUI (the filming) continued up until moments before the crash that made her a victim.
¶ 10 The statute appears to be a codification of a much older common law rule dating at least back to an 1893 English statutory rape case, where the court reasoned that a law intended to protect young girls could not also hold them responsible as accomplices. The Queen v. Tyrrell, 1 Q.B. 710, 711-12 (1894); see also 2 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW 369-70 (2003). The United States Supreme Court first applied the rule in Gebardi v. United States, 287 U.S. 112, 53 S.Ct. 35, 77 L.Ed. 206 (1932). The Court held that a prostitute could not be an accomplice to the crime of transporting herself across state lines. Id. at 118-23, 53 S.Ct. 35. Similarly, there are cases applying the rule to protect victims of criminal abortions and, more recently, battered women who invite their abusers to violate protection orders. In re Pet. of Vickers, 371 Mich. 114, 116-17, 123 N.W.2d 253 (1963); City of North Olmsted v. Bullington, 139 Ohio App.3d 565, 571, 744 N.E.2d 1225 (2000). The history of the rule does not support the city's contention because in any of the examples above, the alleged accomplice/victim could easily have committed acts of encouragement well before becoming a victim, just as Hedlund is alleged to have done. This history does not indicate the rule applied only to those whose complicit acts occurred at the same time as their victimization.
¶ 11 The city also argues that Hedlund was not a victim of DUI but of vehicular assault. While DUI liability does not depend on the existence of a victim, the law does contemplate *319 the existence of victims. See RCW 46.61.5055(6)(a) (the court in a DUI case must consider whether the defendant "was responsible for injury or damage to another or another's property"). We do not believe that DUI is a victimless crime.
¶ 12 It well may be that Judge Cayce was correct, and the rule should be limited to crimes that require a victim. Broadly applied, the statute protecting victims could lead to strange results. For example, one who knowingly provides fuel to an arsonist could be trapped in the fire. Or one who receives relatively minor injuries during a crime could be considered a victim. But the legislature has been quite clear: "a person is not an accomplice in a crime committed by another person if: (a) He is a victim of that crime." RCW 9A.08.020(5).[4] We resist the urge to essentially rewrite such a plainly written statute. Should the legislature intend a more limited definition of "victim," it, not this court, should amend that statute.
¶ 13 The results of the plain reading of the statute will not be as dire or as absurd as the city predicts because accomplices are usually not injured by the very crimes they assist. For example, someone injured helping a bank robber escape (perhaps by gunfire or automobile accident) is not the victim of the robbery and can thus still be charged as an accomplice.
¶ 14 Finally, while we would not hesitate to condemn Hedlund's conduct as reprehensible and indeed criminal, neither do we find it absurd to say that she has been punished enough. Her lack of judgment permitted the loss of the lives of her fiancé as well as several friends, and she spent months rehabilitating from her own severe injuries; further legal penalties[5] would be dwarfed by the suffering she has already endured. We reverse her conviction of DUI.[6]

ADMISSION OF EVIDENCE
¶ 15 The Court of Appeals held the city's cross appeal was moot. Hedlund, 137 Wash. App. at 497, 155 P.3d 149. We disagree. The victim accomplice issue discussed above applies only to Hedlund's DUI conviction and does not affect her convictions for furnishing alcohol and tobacco to minors where she was charged as a principal, not an accomplice. Judge Roberts reversed all of Hedlund's convictions based on the cumulative effect of three errors: failing to sever the charge of furnishing tobacco to a minor, admitting the video of Hedlund's daughter smoking, and letting the jury hear the 911 call. We agree with Judge Roberts that trial error merits reversal on all the charges.
¶ 16 The admission of evidence is reviewed for abuse of discretion. State v. Noltie, 116 Wash.2d 831, 852, 809 P.2d 190 (1991). When its "probative value is substantially outweighed by the danger of unfair prejudice," even relevant evidence may be excluded. ER 403. Evidence causes unfair prejudice when it is "`more likely to arouse an emotional response than a rational decision by the jury.'" State v. Cronin, 142 Wash.2d 568, 584, 14 P.3d 752 (2000) (quoting State v. Gould, 58 Wash.App. 175, 183, 791 P.2d 569 (1990)). The advisory committee's note to Federal Rule of Evidence 403 (which is identical to Washington's rule) notes that unfair prejudice is commonly caused by emotion. Fed.R.Evid. 403, Advisory Committee Note. One Washington commentator has argued that unfair prejudice should be seen not as a matter of emotion, but of erroneous *320 inferences that undermine the goal of the rules to promote accurate fact finding and fairness. See generally Victor J. Gold, Federal Rule of Evidence 403: Observations on the Nature of Unfairly Prejudicial Evidence, 58 Wash. L.Rev. 497 (1983). Under either theory, we find that the prejudicial effect of this 911 call substantially outweighed its very minimal probative value.
¶ 17 Admission of the 911 tape was an abuse of discretion because the recording was inflammatory and of dubious probative value. The caller was excited, exaggerated the circumstances, and described a gruesome scene. While we are confident the exaggerations were unintentional, the caller incorrectly reported that one of the victims was decapitated. Some of the more inflammatory excerpts from the tape are as follows: "Really bad. The (indiscernible) car's torn off. There's bodies, there's a head cut off. We're directly undertherethere's three bodies in the road. There's a head cut off." "Oh, there's legs cut off, heads cut off. And cars, trucks backing up bad now." "There's one, two, threefour bodies. One head cut off. It looks like a child." "One head's cut off. One, two, three, fourfive bodies. I don't think you guys want to see this." CP at 782-84.
¶ 18 We find this situation analogous to the admission of gruesome crime scene photographs. In considering such photographs, we have reversed the customary presumption of admissibility under ER 403 and held that they are admissible if the probative value outweighs the prejudicial effect. State v. Crenshaw, 98 Wash.2d 789, 806-07, 659 P.2d 488 (1983) (cautioning prosecutors to use restraint in admitting gruesome and repetitive photographs when the criminal act is amply proved by noninflammatory evidence); State v. Sargent, 40 Wash.App. 340, 348-49, 698 P.2d 598 (1985) (holding the trial court had abused its discretion in admitting several photographs of a murder victim's body).
¶ 19 Here, the gruesome nature of the crash is not related to any element of any crime charged. See RCW 46.61.502(DUI); RCW 9A.08.020 (accomplice liability); RCW 46.61.500 (reckless driving); RCW 66.44.270 (furnishing alcohol to a minor); RCW 26.28.080 (furnishing tobacco to a minor). The city argues the 911 call establishes where Hedlund was in the car. However, this much is well-established by the videotape and could easily have been asked of the caller on direct examination since she testified live at trial. See CP at 778. The city also argues this case is analogous to Noltie, where we held gruesome photographs were properly admitted so long as they were relevant and accurate. Noltie, 116 Wash.2d at 852, 809 P.2d 190. We do not see the comparison, since in this case, the city admits the most gruesome and repetitive aspect of the 911 tape was not accurate. See Revised Opening Br. of Resp't/Cross-Appellant at 44.
¶ 20 The use of the caller's assertion, repeated no less than five times during the call, that someone had been decapitated appears calculated to inflame the passions of the jury, especially since it was conceded to be untrue. CP at 782-84; Revised Opening Br. of Resp't/Cross Appellant at 44; see also State v. Pendergrass, 179 Mont. 106, 111-12, 586 P.2d 691 (1978) (holding trial court abused its discretion in admitting rape victim's 911 call because the "emotional and nearly incoherent outpourings of the victim in the immediate aftermath of a violent crime" necessarily induced a feeling of outrage against the defendant). Although the city claims the 911 tape could not be more upsetting than the deaths of six young people in a horrific accident, the tape was irrelevant, inaccurate, and inflammatory. We hold it was an abuse of discretion to admit it.
¶ 21 Judge Roberts also found it was an abuse of discretion to admit the portion of the videotape showing Hedlund providing her young daughter with a lighted cigarette and encouraging her to smoke and dance bare bottomed for the camera. Although it was relevant to the charge of furnishing tobacco to a minor, Judge Roberts concluded this portion was highly prejudicial and inflammatory and should not have been admitted as evidence for the other charges of DUI, reckless driving, or furnishing alcohol to a minor. The evidence could have been eliminated by editing the videotape or granting the motion to sever charges. However, inasmuch as the DUI charges must be dismissed because *321 Hedlund was a victim and cannot be tried as an accomplice and the furnishing alcohol and tobacco charges must be reversed because it was an abuse of discretion to admit the 911 tape, we find it unnecessary to reach this issue.

CONCLUSION
¶ 22 We resist the urge to rewrite a plainly written statute. The legislature has declared, "a person is not an accomplice in a crime committed by another person if: (a) He is a victim of that crime." RCW 9A.08.020(5). Should the legislature intend a more limited definition of victim, it may, in its wisdom, amend the statute. Based upon the plain meaning of the statute, we affirm the dismissal of Hedlund's DUI conviction because, as a victim of the crime, she cannot be charged as an accomplice. We also reverse the convictions for furnishing alcohol and tobacco to a minor.
WE CONCUR: SANDERS, OWENS, FAIRHURST, and STEPHENS, JJ.
MADSEN, J. (dissenting).
¶ 23 The majority recognizes that its broad reading of RCW 9A.08.020(5) leads to "strange results." Majority at 319. I would go further: the majority's reading of the statute leads to absurd and untenable results. I respectfully dissent.

Discussion
¶ 24 The majority holds that Teresa Hedlund is a "victim" of driving under the influence (DUI), and therefore RCW 9A.08.020(5) precludes her prosecution as an accomplice to that crime. The majority recognizes that it gives RCW 9A.08.020(5) its broadest possible reading but it insists that its reading is necessary because the statute is "plainly written." Majority at 319. While I agree the statute is "plainly written," I disagree with the majority's reading.
¶ 25 Despite the majority's contention that RCW 9A.08.020(5) is "plainly written," the majority construes the statute because it says that the term "victim" in the statute is not defined in the criminal code or the motor vehicle statutes. Thus, the majority relies on the dictionary definition of "victim" and the understanding of "victim" embodied in the crime victims' compensation act (chapter 7.68 RCW) to conclude that "victim" is a broadly inclusive term and includes Ms. Hedlund.
¶ 26 The majority wanders unnecessarily from the criminal statutes. Instead of reaching for a definition of "victim" outside the criminal and motor vehicle codes, I would hold that RCW 9A.08.020(5) applies only when the elements of the charged offense includes injury to a person or a person's property. In other words, when the statute includes a victim as an element of the crime, it is appropriate to relieve that victim from culpability as an accomplice. Therefore, I would look no further than the definition of the crime charged to determine the meaning of victim. Because DUI does not include an element of injury to persons or property, I would hold that RCW 9A.08.020(5) does not preclude the prosecution of Ms. Hedlund as an accomplice in this case.
¶ 27 In attempting to show that it is adhering to RCW 9A.08.020(5) and that my reading is incorrect, the majority declares that use of the word "`a'" in the statute ("a victim of that crime" (emphasis added)) shows that the statute should be given broad application. Majority at 319 n. 4. The legislature did not use the word "a" so that the statute would be applied to achieve indefensible results. Instead, it did so simply because some crimes have a single victim while others have multiple victims. "A" is grammatically proper when there are multiple victims and reference is being made to one of them.
¶ 28 Not only does the majority go too far, and too far afield in its attempt to give meaning to the term "victim," it unfortunately chooses a definition from the crime victims' compensation act that actually disfavors the majority's all-expansive definition for purposes of RCW 9A.08.020(5). Under the crime victims' compensation act, no benefits from the crime victims' compensation fund can be awarded if the crime victim's injuries were "[s]ustained while the crime victim was engaged in the attempt to commit, or the commission of, a felony." RCW *322 7.68.070(3)(b). The crime victims' compensation act thus expressly contemplates the situation where a "victim" as defined by the act is also charged with committing a crime either as a principal or an accomplice and because of that criminal activity will not receive the benefits provided by the act.
¶ 29 It simply makes no sense to import the definition of the word "victim" from the crime victims' compensation act to expansively include in RCW 9A.08.020(5), and therefore exempt from criminal liability, anyone who is, in the broadest sense, a victim, when that act itself precludes favorable treatment of one injured while committing a crime despite defining that individual as a "victim."
¶ 30 The majority's importation of the term "victim" in the act to define "victim" in RCW 9A.08.020(5) is also contrary to the legislature's intent in enacting the crime victims' compensation act. Under the majority's analysis, an individual injured while committing a crime as an accomplice cannot be charged as an accomplice because he is a "victim" of the crime. It follows that the "victim" who sustained the injuries during the commission of a crime will be entitled to receive benefits under the act because, as a victim, he is free of criminal liability. But this is completely contrary to the legislature's intent to deny compensation for such persons. The fact he is a "victim" should not and does not shield him from his conduct under the crime victims' compensation act.
¶ 31 The majority recognizes that its construction will result in "strange" results. In fact, the majority gives its own examples.[1] Majority at 319. But, the majority says the legislature must have intended absurd results and this court should not "rewrite such a plainly written statute." Id. I disagree. It is a well-settled principle that "[i]n undertaking a plain language analysis, ... [a]bsurd results should be avoided because `"it will not be presumed that the legislature intended absurd results."'" Densley v. Dep't of Ret. Sys., 162 Wash.2d 210, 233, 173 P.3d 885 (2007) (citations omitted) (quoting State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003) (quoting State v. Delgado, 148 Wash.2d 723, 733, 63 P.3d 792 (2003)); accord Tingey v. Haisch, 159 Wash.2d 652, 663-64, 152 P.3d 1020 (2007)) ("the court `will avoid literal reading of a statute which would result in unlikely, absurd, or strained consequences'"; "[a] reading that produces absurd results must be avoided because `"it will not be presumed that the legislature intended absurd results"'" (citations omitted)). I believe the legislature assumed that this court would apply the well-accepted rules of statutory construction to its construction of RCW 9A.08.020(5), including the bedrock rule that "statutes should be construed to effect their purpose and unlikely, absurd or strained consequences should be avoided." State v. Fjermestad, 114 Wash.2d 828, 835, 791 P.2d 897 (1990) (emphasis added). That is the rule I would apply.
¶ 32 Finally, the majority takes some pains to review the origins of the rule now codified in RCW 9A.08.020(5). However, the history actually supports the city's argument that "victim" should be defined by the elements of the charged crime. As the majority notes, the statute has its roots in a statutory rape case where the court reasoned that a law intended to protect young girls could not also hold them responsible as accomplices. The Queen v. Tyrrell, 1 Q.B. 710, 711-12 (1894). Similarly, the rule was first applied in the United States in Gebardi v. United States, 287 U.S. 112, 53 S.Ct. 35, 77 L.Ed. 206 (1932), where the court held a prostitute could not be an accomplice to the crime of transporting herself across state lines. Id. at 118-23, 53 S.Ct. 35. In each of these applications of the rule, the crime charged involved a victim in its elements. The courts in these cases were not faced with and did not have to consider whether the rule should apply if the elements of the charged crime did not identify a victim of the crime. The same is true of a more modern application of the rule in cases involving victims of criminal abortions *323 and battered women who invite their abusers to violate protection orders. In re Pet. of Vickers, 371 Mich. 114, 116-17, 123 N.W.2d 253 (1963); City of North Olmsted v. Bullington, 139 Ohio App.3d 565, 571, 744 N.E.2d 1225 (2000).
¶ 33 A forthright application of the rules of statutory construction, the historical underpinnings of RCW 9A.08.020(5), and common sense lead me to conclude that Ms. Hedlund was properly tried as an accomplice to the crime of DUI.
WE CONCUR: ALEXANDER, C.J., C. JOHNSON and J. JOHNSON, JJ.
NOTES
[1] The record does not clearly establish how April got into the car, but the parties seem to agree this is what occurred, and in the video segments filmed in the car, she appears unconscious.
[2] This citation is to the transcript of the city attorney's closing argument and the judge instructing the jury; the parties did not designate the charging document or the actual jury instructions as part of the record on appeal.
[3] We respectfully disagree with our dissenting colleague's characterization of our opinion as choosing the definition from the crime victims' compensation act, chapter 7.68 RCW. Dissent at 321. We also respectfully disagree that our approach is inconsistent with that act. That act defines a "victim" as "a person who suffers bodily injury or death as a proximate result of a criminal act of another person." RCW 7.68.020(3). This statutory definition accords with the approach we take and would clearly include Hedlund. Later in the act, it exempts from eligibility for benefits several categories of persons and injuries, including, as the dissent notes, injuries "`[s]ustained while the crime victim was engaged in the attempt to commit, or the commission of, a felony.'" RCW 7.68.070(3)(b) (emphasis added) (quoting dissent at 321). No similar exemption appears in the victim/accomplice statute. Instead, the exemption effectively acknowledges that a person can be both criminally liable and a victim. While the legislature could have definitionally excluded accomplices from the definition of "victim" for the victim accomplice rule, it did not and neither shall we.
[4] We respectfully contend that the dissent would have more force if the accomplice liability statute had said that "the" victim of a crime could not be liable as an accomplice rather than "a" victim. Cf. RCW 9A.08.020(5). The exemption of "a" victim is expansive and seems to reasonably contemplate broad application. An exemption of "the" victim, by contrast, might point to a more restrictive scope.
[5] The trial court sentenced her to 365 days, of which 364 days were suspended, a $5,000 fine, of which $4,650 was suspended, and the remaining $350 she was permitted to pay through speaking to high schools about her experience, at a rate of $100 per appearance. It appears that at the time of sentencing, Hedlund had already begun to do this of her own volition.
[6] The Court of Appeals also held that double jeopardy was violated when the DUI charges were reinstated on the writ of review after the initial dismissal by the trial court. Because we reverse the DUI conviction on the ground that Hedlund is a victim, not an accomplice, we need not reach the double jeopardy issue.
[1] Although the majority lists examples, it fails to acknowledge the enormous impact of its decision. The getaway driver wounded in a robbery; the accomplice who is injured by the true victim defending himself against an assault; the accomplice injured by his crime partners in a dispute over "loot"just a few examples of those who will escape prosecution because they are "victims" of the crime.