# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70601-2-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| STEPHEN A. JONES, | ) | |
| Appellant. | ) | FILED: November 17, 2014 |

TRICKEY, J. — The denial of a motion for a mistrial and the determination of whether evidence is relevant are left to the discretion of the trial court and will be overturned only upon a showing of an abuse of that discretion. Here, the trial court did not abuse its discretion in denying a mistrial motion on testimony that was held irrelevant or in finding that the state trooper's testimony was relevant. We affirm.

## FACTS

Trooper Jacob Ballard was on patrol in a fully marked Washington State Patrol vehicle when he observed Stephen Jones driving a small passenger car eastbound on State Route 18 near the Weyerhaeuser exit in King County. While Trooper Ballard was following, Jones moved over from lane two to lane one, only turning his signal on after the switch was completed. Trooper Ballard then observed Jones's car drift onto the right-hand shoulder crossing onto the fog line, twice. Trooper Ballard observed Jones increase his speed to 80 m.p.h., while straddling over the two lanes.

Trooper Ballard again positioned his patrol car behind Jones and activated the emergency lights. Due to the slowing of traffic ahead, Jones's car initially slowed to approximately half the speed limit. When there was a slight opening in the traffic, the car

accelerated to 65 m.p.h. and continued eastbound. Jones again made an unsafe lane change, coming close to a car that was forced to maneuver and break to avoid contact. Jones's car continued eastbound straddling both lanes. Trooper Ballard observed Jones reach over and put on his seat belt.

Approximately one mile later, Jones's car pulled off the Auburn Way exit and onto the shoulder. As it approached the traffic signal, Jones's car quickly moved from lane one into lane two and then stopped for the red light. The trooper observed Jones moving around within the vehicle reaching back behind the passenger seat location. Jones drove through the intersection approaching the entrance to Denny's restaurant parking lot and then drove around to the back, parking on the white line.

Trooper Ballard approached the car and observed the driver speaking on his cell phone. Jones did not want to stop speaking on the phone and yelled at the trooper, asking what the problem was. Trooper Ballard advised Jones why he made the stop, but Jones continued his phone conversation, speaking with slurred speech. Trooper Ballard observed that Jones was moving slowly, his face was red and flushed, and his eyes were bloodshot and glassy.

When Jones finally ended his cell phone conversation, Trooper Ballard asked him to step outside the vehicle. Jones appeared unsteady on his feet, swaying in a circular motion. During the interaction Jones was aggressive and hostile. Because of Jones's demeanor and actions, Trooper Ballard placed Jones under arrest without giving him a field sobriety test.

When Trooper John Ford arrived on the scene to assist, Jones was in Trooper Ballard's patrol car, yelling and very upset. Trooper Ford noted that Jones was walking

slowly, had bloodshot watery eyes, slurred speech, a flushed face, and smelled of alcohol. Trooper Ford testified that it was obvious to him that Jones was impaired by alcohol.

Because Jones refused to take a breath test, Trooper Ballard obtained a search warrant to obtain Jones's blood. Approximately two and half hours after Jones was stopped, the trooper obtained the search warrant. Both troopers escorted Jones to the hospital.

Upon arrival at Auburn Medical Center, Jones requested to use the bathroom. Both troopers felt that Jones was in the restroom for an extended period of time. The officers knocked on the door because they thought he had fallen asleep. As Jones left the bathroom, he had difficulty buttoning his pants and actually stated so.

Jones's blood alcohol tested at .082 and .083, which was rounded down to .08. Because Jones's blood was not tested for almost three hours, a forensic toxicologist used retrograde extrapolation, calculating that one hour prior to the blood draw, Jones's alcohol blood level was between .09 and .10. The toxicologist testified that the level of confidence in these calculations was 99.7 percent.

The State charged Jones with driving under the influence as a felony and attempting to elude a pursuing police officer.

At trial, in response to the State's question regarding his current duties, background, and experience, Trooper Ford testified that he was a collision reconstructionist. His duties included investigating accidents involving the consumption of alcohol or drugs, reckless driving, or racing. Trooper Ford testified that the state's goal was to decrease fatality collisions that occur because of drivers impaired by alcohol or drugs, speeding, failing to wear a seatbelt, and aggressive driving. Defense counsel

3

objected to the relevancy of that testimony and the trial court instructed the State to ask another question.

At the close of the State's case, defense counsel moved to dismiss the charge of attempting to elude, arguing that the State failed to prove the necessary elements of the crime. Defense also moved to dismiss the entire case, asserting that Trooper Ford's testimony regarding accident fatalities and their relationship to DUIs (driving under the influence of an intoxicant) was unfairly prejudicial. The trial court denied the motions to dismiss.

A jury found Jones guilty of driving under the influence and attempting to elude a pursuing police vehicle. By special verdict, the jury found Jones's driving caused a risk of harm to another person other than himself or the pursuing officer.

At a bifurcated proceeding, the trial court found that Jones had been previously convicted of four or more qualifying offenses within 10 years, thus elevating the DUI to a felony. The trial court imposed a standard range sentence. Jones appeals.

## ANALYSIS

Jones argues that Troopers Ford's and Ballard's testimony was improper, resulting in an unfair trial. Jones also argues that the matter should be remanded to the trial court to enter findings of fact and conclusions of law on the bifurcated bench trial. However, since then, the trial court has issued those findings and conclusions, and Jones has not alleged any prejudice from their delayed entry. A remand is therefore unnecessary. State v. Gaddy, 114 Wn. App. 702, 705, 60 P.3d 116 (2002), aff'd, 152 Wn.2d 64, 93 P.3d 872 (2004).

## Trooper Ford's Testimony

At the conclusion of the State's case, defense moved to dismiss the attempt to elude charge. Defense also sought dismissal of all charges claiming Trooper Ford's testimony was inflammatory and prejudicial. The dismissal motion about Trooper Ford's testimony was essentially a motion for a mistrial. The appellant's brief recognizes that mistrial would be the proper remedy.[1]

This court reviews a trial court's denial of a motion for a mistrial under an abuse of discretion standard and will only grant a new trial when a "defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly." State v. Lewis, 130 Wn.2d 700, 707, 927 P.2d 235 (1996). Absent a clear abuse of discretion by the trial court, we will not reverse an order denying a motion for new trial. State v. Bourgeois, 133 Wn.2d 389, 406, 945 P.2d 1120 (1997).

Jones's argument that the trial court erred in failing to grant his motion to dismiss because Trooper Ford's testimony was inflammatory and unfairly prejudicial is not well taken. In response to the State's question of whether Trooper Ford's duties involved DUI investigations, Trooper Ford responded:

> Absolutely right. The State Patrol, one of our main goals is to decrease fatality collisions in Washington [S]tate. And they've actually ranker [(sic)] people who are impaired by alcohol candor [(sic)] drugs, speeding, people not wearing seatbelts, or aggressive drivers as one of the core reasons why people actually are dying on the freeways ways [(sic)], so our main goal is to --[2]

Defense counsel objected to its relevance and the court directed the State to move to another line of questioning. Jones contends that the trial court failed to strike the

---

[1] Br. of Appellant at 16.
[2] 3 Report of Proceedings (RP) (April 17, 2013) at 91.

response and inform the jury that this testimony should be disregarded. However, Jones did not request the trial court do so.

Jones argues that Trooper Ford's statements were prejudicial because of their inherent tendency to arouse the emotions of the jury. He primarily relies on City of Auburn v. Hedlund, 165 Wn.2d 645, 201 P.3d 315 (2009), to support his argument. There, a 911 caller described a gruesome accident scene with decapitated bodies. Hedlund, 165 Wn.23d at 655. The court concluded that the prejudice outweighed the probative value of the testimony. Hedlund, 165 Wn.2d at 654-56. But that case is distinguishable. Here, the trooper's testimony was merely recounting his duties which were found not relevant by the trial court. The trooper's testimony that his job primarily involved calls to fatal accidents caused by DUIs among other reasons, was not nearly as inflammatory or prejudicial as in Hedlund. His reliance on this case is not persuasive.

Additionally, Jones argues that the trial court erred in permitting Trooper Ford's testimony regarding the obstacles troopers faced in giving field sobriety tests to particular arrestees:

> The person's demeanor, officer safety. We don't want to get hurt or -- our main goal is to go home safe at night. We have families, and it's our main goal to be safe. If the person's demeanor is aggressive or we feel unsafe based on this person's personality --
>
> . . . .
>
> Officer safety first is my rule. Out doing field sobriety tests, it might be extremely cold, might be snowing sideways or raining hard. A person might just not be able to do field sobriety tests based on maybe he has a handicap, that's possible as well. And in a perfect world we'd like to, but you don't get that chance every time.[3]

The trial court ruled the evidence admissible.

---

[3] 3 RP at 93.

We review decisions on the admissibility of evidence under an abuse of discretion standard. State v. Stenson, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997). An abuse of discretion exists "[w]hen a trial court's exercise of its discretion is manifestly unreasonable or based upon untenable grounds or reasons." Stenson, 132 Wn.2d at 701 (citing State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)).

On appeal, Jones argues that Trooper Ford's testimony was likewise inflammatory, prejudicial, and irrelevant. Jones relies on State v. Edwards, 131 Wn. App. 611, 128 P.3d 632 (2006), to support this position. In Edwards, the trial court, over defense counsel's objection, admitted a detective's testimony regarding a confidential source's statements to the detective. 131 Wn. App. at 614-15. The source told the detective that the defendant was dealing crack cocaine. The State argued the statements were not hearsay because they were offered to show their effect on the detective. Edwards, 131 Wn. App. at 614. But Division Three of the Court of Appeals concluded that the source's statements were inadmissible hearsay and the error in admitting the evidence was not harmless. Edwards, 131 Wn. App. at 615-16.

Here, the facts are substantially different from Edwards. Trooper Ford testified that traffic, weather, safety, and other causes factored into a trooper's decision on whether to administer a field sobriety test. This testimony was neither inflammatory nor prejudicial.

Furthermore, the issue of whether or not Jones was driving under the influence was squarely before the jury. The decision on why a trooper would not administer a sobriety test was relevant and the trial court did not abuse its discretion in admitting the testimony.

Trooper Ballard's Testimony

On appeal, Jones argues that Trooper Ballard's testimony constituted an opinion on Jones's guilt, and may be raised for the first time on appeal, citing State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). There, the defendants claimed for the first time on appeal that testimony by detectives and a physician constituted improper opinion evidence regarding victim credibility. The Kirkman court held that testimony of an investigating officer does not necessarily give rise to a manifest constitutional error where there has been no objection at trial. 159 Wn.2d at 938. Even if addressed, the issue here, the testimony was not a comment on Jones's guilt.

Trooper Ballard testified that in his opinion Jones did not appear to stop:

> The vehicle appeared, due to the fact that it was not going to stop at any time. In my training and experience the vehicle didn't appear to -- the driver did not appear to be finding a safe spot to stop, the vehicle accelerated, made an evasive move, or passing vehicles.[4]

Generally, a witness may not testify in the form of an opinion about the guilt or veracity of the defendant. State v. Demery, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001). In determining whether statements are impermissible opinion testimony, courts consider the circumstances of the case, the type of witness, the nature of the testimony, the nature of the charges, the type of defense, and other evidence before the trier of fact. State v. King, 167 Wn.2d 324, 332-33, 219 P.3d 642 (2009). While it is true that an officer's testimony carries a special aura of reliability, here, the testimony did not constitute an opinion on Jones's guilt. The trooper was merely recounting inferences of fact-based observations. See State v. Blake, 172 Wn. App. 515, 525-26, 298 P.3d 769 (2012)

---

[4] 2 Report of Proceedings (RP) (April 16, 2013) at 25.

(testimony that includes inferences of fact-based observations admissible), review denied, 177 Wn.2d 1010, 302 P.3d 180 (2013).

Jones also cites State v. Farr-Lenzini, 93 Wn. App. 453, 463, 970 P.2d 313 (1999), in support of his position. There, a state trooper testified about his opinion of the defendant's state of mind in a trial for attempting to elude a pursuing police officer. The trooper testified that the defendant driving the vehicle was attempting to get away from him and that the defendant knew the trooper was behind her but refused to stop. Division Two of the Court of Appeals held that this testimony was reversible error because the driver's state of mind was a core element of the offense, the trooper testified to it without a sufficient factual background, and there was a credible alternative explanation for his observations. Farr-Lenzini, 93 Wn. App. at 461-66. Farr-Lenzini is easily distinguishable from the testimony in this case.

Here, Trooper Ballard did not make a direct statement about Jones's guilt because he did not testify to Jones's state of mind. "The fact that an opinion encompassing ultimate factual issues supports the conclusion that the defendant is guilty does not make the testimony an improper opinion on guilt." State v. Heatley, 70 Wn. App. 573, 579, 854 P.2d 658 (1993) (emphasis omitted). Trooper Ballard only testified to events that he witnessed unfolding as he was pursuing Jones's car. Trooper Ballard's testimony was nothing more than an inference based on the actions that he witnessed. Under these circumstances the testimony did not constitute an opinion on guilt.

Cumulative Error

Finally, Jones argues that cumulative errors prejudiced the outcome of the trial. Because Jones has failed to show any claim of error, his claim of cumulative error fails. See State v. Price, 126 Wn. App. 617, 655, 109 P.3d 27 (2005).

Affirmed.

_Trickey, J_

WE CONCUR:

_Spearman, J_          _Becker, J_