# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59948-1-II |
| Respondent, | |
| v. | |
| CHRISTOPHER L. FLOE, | PUBLISHED OPINION |
| Appellant. | |

LEE, P.J. — Christopher L. Floe appeals his convictions on conspiracy to commit second degree assault and conspiracy to commit drive-by shooting. Floe argues that because he was the victim of the assault and drive-by shooting, he cannot be held criminally liable for conspiring to commit those offenses. We affirm Floe's convictions.

## FACTS

### A.    SHOOTING AND INVESTIGATION[1]

In the early morning hours of October 7, 2021, someone shot Floe outside of the Shelton Department of Corrections (DOC) office. At the time, DOC employed Floe. Records show that Floe signed a Department of Labor and Industries Report of Accident on October 7 "affirming his gunshot wound occurred on the job." Clerk's Papers (CP) at 207.

---

[1] The facts are drawn from the findings of fact made by the trial court following Floe's stipulated facts bench trial. *See* Clerk's Papers (CP) at 182-83 ("Stipulation for Bench Trial") *and* Supp. CP at 203-12 ("Findings of Fact, Conclusions of Law, and Court's Decision Following Bench Trial"). Because Floe does not assign error to any of the trial court's findings of fact, they are verities on appeal. *State v. Rodgers*, 146 Wn.2d 55, 61, 43 P.3d 1 (2002).

After the shooting, Floe called 911 to report the shooting before being transported to a hospital. Police interviewed Floe at the hospital, and he told the officers that the morning had begun with a workout at a gym. When Floe arrived at work following his workout, his sister, Caroline Harris, brought him breakfast and then drove away. Floe reported that after Harris left, he was shot. Floe told the interviewing officers that he did not know who shot him, "but described the individual as wearing a hoodie and having a [male] gait." CP at 206. Police interviewed Floe again about an hour later, and "Floe confirmed the majority of his prior description of the events of the morning."[2] CP at 206.

Police also spoke with Harris at the hospital on October 7. Harris stated that she brought Floe a donut that morning and then left. CP at 206.

Following their interviews with Floe and Harris, police continued to investigate the shooting. Surveillance footage and neighborhood interviews "led officers to believe that Harris' SUV was still present on scene at the time Floe was shot contrary to his prior statements." CP at 207. Police also deployed a tracking dog but found no trace of the male "individual described by Floe as running from the scene." CP at 207.

Police interviewed Floe a third time on October 14. Floe initially "confirmed most of the details he ha[d] previously provided to law enforcement about" the shooting. CP at 207. However, when the interviewing officers informed Floe they knew Harris's SUV was still on the scene when Floe was shot, Floe admitted that he convinced his sister to shoot him. Floe was "frustrated" with

---

[2] Police also asked Floe about a DOC investigation concerning Floe's alleged sexual contact with a parolee. Floe initially "denied any substantive knowledge of . . . [the] investigation." CP at 206. However, when pressed, Floe denied any sexual contact, but admitted to two potential contacts with an individual who had previously been on DOC supervision but was not on his caseload.

DOC because DOC "doesn't care." CP at 208. "Floe decided he need[ed] to get out of DOC but would need to figure out a fi[n]ancially feasible way to do so." CP at 208.

To that end, Floe began talking Harris into helping him. Harris later told police that "Floe had started asking her, nagging, to shoot him because he wanted out of DOC. This started four to five days prior to the shooting." CP at 208. Floe knew he could manipulate his sister into helping him because her medical history left her functioning "similarly to a 16 year old." CP at 208. Harris eventually agreed to Floe's request. Floe directed Harris to shoot him and provided Harris with his gun.

Police also interviewed Harris on October 14, and she recounted what actually occurred the morning of October 7. "Harris confirmed Floe had provided her with the handgun she used to shoot Floe and they arranged for her to come to his office" the morning of October 7. CP at 208. When Harris arrived that morning, there was another vehicle nearby so she left and came back. When Harris returned, "[s]he pulled up next to Floe, Floe directed her where to shoot and she did. The shell casing landed in her lap." CP at 208. Harris then "sat for a moment," but when "Floe told her 'Go,'" she left. CP at 208. Harris told the interviewing officers where she left the shell casing and firearm, and both items were recovered by the police where Harris said they would be.

The State subsequently charged Floe by amended information with second degree assault, conspiracy to commit second degree assault, drive-by shooting, conspiracy to commit drive-by shooting, and false reporting.

B.    PRETRIAL MOTIONS

Prior to trial, Floe moved to dismiss the drive-by shooting and second degree assault charges, arguing that he could not be held criminally liable as an accomplice pursuant to RCW

3

9A.08.020.[3] At a hearing on the motion, the State informed the trial court that it had filed a second amended information that did not include the charges of second degree assault and drive-by shooting. Instead, Floe was charged in the second amended information with conspiracy to commit second degree assault (count 1), conspiracy to commit drive-by shooting (count 2), false reporting (count 3), first degree rendering criminal assistance (count 4), forgery (count 5), and filing a false labor and industries claim (count 6). Both conspiracy counts were charged with firearm sentencing enhancements. The State also filed a Notice of Intent to Seek Exceptional Sentence and identified four bases for an exceptional sentence: a high degree of sophistication; use of a position of trust; an egregious lack of remorse; and a destructive and foreseeable impact on persons other than the victim.[4]

Floe moved to dismiss the two conspiracy charges in the second amended information. Floe noted that Washington's accomplice liability statute, RCW 9A.08.020(5)(a), precludes holding an accomplice criminally liable if they are the victim of the crime charged. Floe argued that "[b]y extension a person cannot [be] charged in a conspiracy if that person is the victim of the conspiracy." CP at 76. Floe also cited *Gebardi v. United States*,[5] arguing that the case precluded charging the victim of a conspiracy with conspiracy to commit the underlying offense.

---

[3] "[A] person is not an accomplice in a crime committed by another person if: . . . He or she is a victim of that crime." RCW 9A.08.020(5)(a).

[4] The Notice of Intent to Seek Exceptional Sentence is not in the record on appeal, but is referenced in the trial court's findings of fact and conclusions of law following Floe's bench trial.

[5] 287 U.S. 112, 53 S. Ct. 35, 77 L. Ed. 206 (1932).

The trial court rejected Floe's arguments. The trial court explained that Floe's reliance on *Gebardi* was "misplaced" because *Gebardi* held that the defendant could not be charged with conspiracy to violate the Mann Act when her mere consent to being transported across state lines for immoral purposes—the underlying substantive offense—was insufficient action under the terms of the Mann Act to support the conspiracy charge. CP at 175. The trial court also noted that the Supreme Court had since clarified *Gebardi* by stating that "'[a] conspirator need not agree to commit the substantive offense—or even be capable of committing it—in order to be convicted. It is sufficient that the conspirator agreed that the underlying crime *be committed* by a member of the conspiracy capable of committing it.'" CP at 175 (quoting *Ocasio v. United States*, 578 U.S. 282, 282, 136 S. Ct. 1423, 194 L. Ed. 2d 520 (2016) (emphasis in original)).

The trial court also found Floe's analogy to Washington's accomplice liability statute unpersuasive. The trial court explained that while "the conspiracy statute is arguably silent on its application to victims," "[t]here is no such clear legislative prohibition in the conspiracy statute and if the legislature intended such a prohibition in the conspiracy statute it could have included it when [it] amended t[he] accomplice statute to include the victim language." CP at 176. Thus, the trial court denied Floe's motion to dismiss the two conspiracy charges in the second amended information.

C.    STIPULATED FACTS BENCH TRIAL

Both parties stipulated to a "Bench Trial on Agreed Documentary Evidence," and the case proceeded to a bench trial on September 8, 2023. CP at 182. Police reports, forensic investigation reports, a labor and industries investigative report, Floe's medical records, and transcripts of police interviews with Floe and Harris were all admitted into evidence and considered by the trial court.

5

D.    GUILTY VERDICT AND SENTENCING

Following the bench trial, the trial court issued written findings of fact consistent with the facts outlined above. Based on its findings of fact, the trial court concluded that Floe was guilty of all charges except the forgery charge (count 5). The trial court also concluded that the firearm sentencing enhancement applied to the conspiracy to commit second degree assault charge, but not to the conspiracy to commit drive-by shooting charge. Finally, the trial court concluded that two of the aggravating circumstances pled by the State—abuse of trust and destructive and foreseeable impact—had been proven beyond a reasonable doubt.

Floe appeals.

ANALYSIS

Floe appeals only his two conspiracy convictions. Floe's challenge contends that "[a]s a victim of the crimes of Assault Second Degree and Drive by Shooting Mr. Floe is not prosecutable for these crimes." Br. of Appellant at 3.

Floe makes four arguments regarding his conspiracy convictions. First, Floe argues his conspiracy convictions are precluded by *Gebardi v. United States* and its progeny. Second, Floe argues that the statutory elements of second degree assault and drive-by shooting both require an actor and a victim and thus, the plain language of RCW 9A.36.021 (second degree assault) and RCW 9A.36.045 (drive-by shooting) precludes his convictions. Third, Floe argues that because "[a] person cannot be charged as an accomplice if he is the victim," then, "[b]y extension[,] a person cannot be charged in a conspiracy if that person is the accomplice to and victim of a crime." Br. of Appellant at 18. Finally, Floe argues that his conspiracy convictions cannot stand because "conspiracy requires an agreement and a mens rea that must be shared by the co-conspirators. It

6

is impossible for a victim of the crime to share the mens rea of a conspirator." Br. of Appellant at 4. We address each argument in turn.

A.   *GEBARDI*, *HOLTE*, AND *OCASIO*

Floe argues that in *Gebardi*, the U.S. Supreme Court formulated "the idea that [if the] substantive crime does not allow for the prosecution of a victim of that crime but the State attempts to pull the victim into criminal culpability by using an[] inchoate crime such as conspiracy or accomplice liability the Court will not allow this expansion of criminal liability without legislative action." Br. of Appellant at 7. Therefore, Floe argues, he cannot be prosecuted for conspiracy because he could not have committed the substantive crime. Floe misconstrues *Gebardi*.

In *Gebardi*, a woman was charged with "conspiring [with a man] that the man should transport the woman from one state to another for purposes of prostitution" in violation of the Mann Act. 287 U.S. at 116. However, there was no evidence that the woman "purchased the railroad tickets or that hers was the active or moving spirit in conceiving or carrying out the transportation. The proof shows no more than that she went willingly upon the journeys for the purposes alleged." *Id.* at 117.

The Supreme Court began by noting that the woman could not be charged as a principal under the Mann Act: "The act does not punish the woman for transporting herself; it contemplates two persons—one to transport and the woman or girl to be transported. For the woman to fall within the ban of the statute she must, at the least, 'aid or assist' someone else in transporting or in procuring transportation for herself." *Id.* at 118-19. In other words, the woman's participation must "be more active than mere agreement on her part to the transportation and its immoral purpose" because while the Mann Act "is drawn to include those cases in which the woman

7

consents to her own transportation," "it does not specifically impose any penalty upon her, although it deals in detail with the person by whom she is transported." *Id.* at 119. Because "the Court perceived in §2 of the Mann Act a congressional judgment that a woman should not be convicted for the offense created by that provision if she did no more than consent to or acquiesce in the interstate trip," the defendant in *Gebardi* could not be charged with a substantive violation of the Mann Act. *Ocasio*, 578 U.S. at 291 n.4.

In *Gebardi*, the State conceded that "the woman could not commit the substantive offense," but argued that it could still charge the woman with conspiracy to violate the Mann Act. *Gebardi*, 287 U.S. at 119. Thus, the Court addressed "whether [the woman's] concurrence, which was not criminal before the Mann Act, nor punished by it, may, without more, support a conviction under the conspiracy section, enacted many years before." *Id.* at 120.

The Court began its analysis by citing to *United States v. Holte*, 236 U.S. 140, 35 S. Ct. 271, 59 L. Ed. 504 (1915), explaining *Holte*'s holding as follows:

> [A]n agreement to commit an offense may be criminal, though its purpose is to do what some of the conspirators may be free to do alone. Incapacity of one to commit the substantive offense does not necessarily imply that he may with impunity conspire with others who are able to commit it. For it is the collective planning of criminal conduct at which the statute aims. The plan is itself a wrong which, if any act be done to effect its object, the state has elected to treat as criminal. And one may plan that others shall do what he cannot do himself.

*Id.* at 120-21 (internal citations omitted).

Despite this legal principle, the Court explained that the case before it presented "more than an agreement between two persons for one of them to commit an offense which the other cannot commit. There is the added element that the offense planned . . . involves the agreement of the woman to her transportation by the man, which is the very conspiracy charged." *Id.* at 121.

By declining to criminalize the woman's "mere consent" to be transported across state lines for an immoral purpose, the Mann Act demonstrated "an affirmative legislative policy to leave her acquiescence unpunished." *Id.* at 123. A "necessary implication of that policy" was that "when the Mann Act and the conspiracy statute came to be construed together . . . the same participation which the former contemplates as an inseparable incident of all cases in which the woman is a voluntary agent at all, but does not punish, was not automatically to be made punishable under the latter." *Id.* In other words, "[i]t would contravene that policy to hold that the very passage of the Mann Act effected a withdrawal by the conspiracy statute of that immunity which the Mann Act itself confers." *Id.*

*Gebardi* does not, as Floe argues, stand for the proposition that a defendant's inability to commit a substantive offense precludes prosecuting the defendant for conspiracy to commit the substantive offense. Instead, the Court explicitly stated that the "[i]ncapacity of one to commit the substantive offense does not necessarily imply that he may with impunity conspire with others who are able to commit it." *Id.* at 120.

Decades later, the U.S. Supreme Court revisited the issue in *Ocasio v. United States*.[6] While working as a police officer, Ocasio participated in a kickback scheme in which he and other officers would convince car accident victims to have their vehicles towed to a specific local auto repair shop in exchange for payments from the shop owners. *Id.* at 283-84. Ocasio was subsequently convicted under the Hobbs Act and the federal conspiracy statute. *Id.* at 285, 287. Ocasio appealed, arguing "that his conspiracy conviction was fatally flawed because the

---

[6] We note that Floe does not discuss, or even cite to, *Ocasio*'s holding or its discussion of *Holte* and *Gebardi*.

conspirators had not agreed to obtain money from a person who was not a member of the conspiracy." *Id.* at 287.

The Court rejected Ocasio's argument, explaining that a defendant need "'not agree to commit or facilitate each and every part of the substantive offense'" to be held criminally liable for conspiring to commit the substantive offense. *Id.* at 288 (quoting *Salinas v. United States*, 522 U.S. 52, 63, 118 S. Ct. 469, 139 L. Ed. 2d 352 (1997)). The government need not prove that the defendant intended to commit the underlying offense themselves; rather, "'[i]f conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators.'" *Id.* at 288 (alteration in original) (quoting *Salinas*, 522 U.S. at 64). Moreover, "a conspirator may be convicted 'even though he was incapable of committing the substantive offense' himself."[7] *Ocasio*, 578 U.S. at 289 (quoting *Salinas*, 522 U.S. at 64).

The *Ocasio* court then discussed *Holte* and *Gebardi*, explaining that both cases "make perfectly clear that a person may be convicted of conspiring to commit a substantive offense that he or she cannot personally commit." *Id.* at 292. "[W]hen [a defendant's] consent or acquiescence is inherent in the underlying substantive offense, something more than bare consent or acquiescence may be needed to prove that the person was a conspirator." *Id.* Thus, consistent with *Gebardi*, in cases where a defendant's "consent or acquiescence is inherent in the underlying

---

[7] The Washington Supreme Court has articulated a similar standard: "To obtain a [conspiracy] conviction, all a prosecutor needs to prove is that the conspirators agreed to undertake a criminal scheme and that they took a substantial step in furtherance of the conspiracy. The defendant need not commit any other crime." *State v. Bobic*, 140 Wn.2d 250, 265, 996 P.2d 610 (2000) (internal citation omitted).

substantive offense," the government would have to show "more than bare consent." *Id.* at 292. Because the government had demonstrated that Ocasio and his conspirators "specifically intended that *some conspirator* commit each element of the substantive offense," the Court affirmed Ocasio's conspiracy conviction. *Id.* at 292, 300 (emphasis in original).

Here, Floe was convicted of conspiring with Harris to commit second degree assault and drive-by shooting. Even assuming without deciding that Floe was a victim of both underlying crimes and thus could not be charged with the substantive crimes themselves, the record demonstrates that Floe initiated the plan and convinced Harris to carry out the assault and drive-by shooting. And Harris was able to commit each element of the substantive offenses: Harris "[i]ntentionally assault[ed] another and thereby recklessly inflict[ed] substantial bodily harm" *and* she "recklessly discharge[d] a firearm" "from a motor vehicle," "creat[ing] a substantial risk of death or seriously physical injury to another person." *Ocasio*, 578 U.S. at 292; RCW 9A.36.021(1)(a); RCW 9A.36.045(1).

Moreover, even assuming without deciding that Floe's consent or acquiescence is inherent in the underlying offenses, the record demonstrates that Floe did more than merely consent to the assault and drive-by shooting. Here, Floe came up with the plan, convinced Harris to assist him, and provided Harris with the gun she used during the crimes. *Ocasio*, 578 U.S. at 292. Thus, Floe's first argument that his conspiracy convictions are precluded by *Gebardi v. United States* and its progeny fails.

B.      STATUTORY ELEMENTS

Floe argues that the plain language of the statutes defining second degree assault and drive-by shooting require an actor and a victim, and because both offenses are written in terms of the

defendant assaulting or shooting "another," Floe's status as the victim in both crimes precludes his

convictions as "he cannot conspire with himself to assault himself." Br. of Appellant at 13-14, 18.

We disagree.

"A person is guilty of assault in the second degree if he or she . . . [i]ntentionally assaults

another and thereby recklessly inflicts substantial bodily harm," or if the person "[a]ssaults another

with a deadly weapon."RCW 9A.36.021(1)(a), (c).

> A person is guilty of drive-by shooting when he or she recklessly discharges
> a firearm . . . in a manner which creates a substantial risk of death or serious physical
> injury to another person and the discharge is either from a motor vehicle or from
> the immediate area of a motor vehicle that was used to transport the shooter or the
> firearm, or both, to the scene of the discharge.

RCW 9A.36.045(1). We review issues of statutory interpretation de novo. *State v. Morgan*, 4

Wn.3d 261, 265, 562 P.3d 360 (2025).

Floe is correct that the plain language of the assault and drive-by shooting statutes require

both an actor—the shooter or assaulter—and "another"—the victim. RCW 9A.36.021(1)(a), (c);

RCW 9A.36.045(1). However, even assuming without deciding that "[a] person . . . cannot assault

himself or herself," Floe's argument fails because Floe was not charged with second degree assault

or drive-by shooting, but with *conspiracy* to commit those offenses. Br. of Appellant at 16. And

while conspiracy requires an agreement between two or more persons, it does not turn on whether

the co-conspirators are perpetrators or victims.

In Washington, the appropriate focus of a conspiracy charge "is on the conspiratorial

agreement, not the specific criminal object or objects." *Bobic*, 140 Wn.2d at 265.

> A person is guilty of criminal conspiracy when, with intent that conduct
> constituting a crime be performed, he or she agrees with one or more persons to

> engage in or cause the performance of such conduct, and any one of them takes a substantial step in pursuance of such agreement.

RCW 9A.28.040(1). To obtain a conviction, all the State "needs to prove is that the conspirators agreed to undertake a criminal scheme and that they took a substantial step in furtherance of the conspiracy." *Bobic*, 140 Wn.2d at 265. The State need not show that the defendant committed any other crime. *Id.*

Here, the uncontroverted evidence demonstrates that Floe and Harris agreed to stage an assault and drive-by shooting, and that they both agreed to and intended for Harris to actually shoot Floe on October 7. Moreover, both Floe and Harris took substantial steps towards enacting their plan: Floe provided Harris with the gun used to shoot him, and Harris drove herself to the Shelton DOC office and positioned herself to shoot Floe. Thus, the evidence showed "that the conspirators agreed to undertake a criminal scheme and that they took a substantial step in furtherance of the conspiracy." *Id.*

Moreover, this is not a case where, as Floe argues, the "State seeks to criminalize behavior that the Legislature has not criminalized." Br. of Appellant at 16. Rather, this case is a straightforward application of the conspiracy statute to a unique set of facts. Because Floe was charged with conspiracy to commit second degree assault and drive-by shooting, it is immaterial whether he was a victim of the conspiracy because Floe had already engaged in the criminalized conduct—agreeing to and taking a substantial step toward causing the performance of a crime with

another, Harris. Floe's argument based on the plain language of the statutes defining second degree assault and drive-by shooting fails.[8]

C.      ACCOMPLICE LIABILITY

Floe argues that because the victim of a crime cannot be charged as an accomplice to the crime, then "[b]y extension a person cannot be charged in a conspiracy if that person is the accomplice to and victim of a crime." Br. of Appellant at 18. We disagree.

Washington's accomplice liability statute explicitly exempts victims of a crime from being charged as accomplices to that crime. RCW 9A.08.020(5)(a) ("[A] person is not an accomplice in a crime committed by another person if: . . . [h]e or she is a victim of that crime."). However, the conspiracy statute contains no such prohibition. *See* RCW 9A.28.040(2) (listing circumstances that "shall not be a defense to criminal conspiracy").

As stated above, we review issues of statutory interpretation de novo. *Morgan*, 4 Wn.3d at 265. "Where the Legislature omits language from a statute, intentionally or inadvertently, [reviewing courts] will not read into the statute the language that it believes was omitted." *State v. Moses*, 145 Wn.2d 370, 374, 37 P.3d 1216 (2002).

---

[8] In his brief, Floe cites to *United States v. Brock*, 501 F.3d 762 (6th Cir. 2007), arguing that it supports the proposition that a conspirator's inability to carry out the substantive crime precludes holding the conspirator criminally liable for conspiring to carry out the substantive crime. In *Brock*, the Sixth Circuit held that "[t]o be covered by the [Hobbs Act], the alleged conspirators . . . must have formed an agreement to obtain 'property from *another*,' which is to say, formed an agreement to obtain property from someone outside the conspiracy." 501 F.3d at 767 (emphasis in original). However, the U.S. Supreme Court rejected this portion of *Brock* in *Ocasio*, where the Court held that "[u]nder longstanding principles of conspiracy law, a defendant may be convicted of conspiring to violate the Hobbs Act based on proof that he entered into a conspiracy that had as its objective the obtaining of property from *another conspirator* with his consent and under color of official right." 578 U.S. at 287 (emphasis added).

Here, while the legislature explicitly exempted crime victims from accomplice liability, the legislature did not do so with regard to conspiracy. Without the same explicit language exempting victims from accomplice liability in the conspiracy statute, we decline to read into Washington's conspiracy statute an exemption prohibiting a victim from being charged with conspiracy for the underlying substantive crime.[9]

D.    MENS REA

Finally, Floe argues that his conspiracy convictions cannot stand because conspiracy requires "a mens rea that must be shared by the co-conspirators" and "[i]t is impossible for a victim of the crime to share the mens rea of a conspirator." Br. of Appellant at 4. We disagree.

Here, the record clearly shows that Floe and Harris shared the same mens rea—both conspirators planned and agreed to shoot Floe. The undisputed record shows that both Floe and Harris intended that Harris commit the crimes of assault and drive-by shooting against Floe.

To support his argument, Floe cites *United States v. Daniels*, 653 F.3d 399 (6th Cir. 2011), *cert. denied*, 565 U.S. 1138 (2012). In *Daniels*, the defendant was charged with several federal crimes, including one count of engaging in a child exploitation enterprise ("CEE"). 653 F.3d at 404. Daniels appealed his conviction, arguing that there was insufficient evidence to sustain the conviction. *Id.*

---

[9] In his brief, Floe argues that his case is similar to *City of Auburn v. Hedlund*, 165 Wn.2d 645, 201 P.3d 315 (2009). However, *Hedlund* is inapposite. There, our supreme court addressed whether the defendant was a victim within the meaning of RCW 9A.08.020(5) such that she could not be charged as an *accomplice*. *Hedlund*, 165 Wn.2d at 651-54. The defendant was not charged as a co-conspirator, nor did the court cite or discuss Washington's conspiracy statute. Therefore, *Hedlund* does not support Floe's argument.

The Sixth Circuit began by explaining that a CEE conviction required proof that "(1) the defendant committed at least three separate predicate offenses that constitute a series of at least three incidents; (2) more than one underage victim was involved; and (3) at least three other people acted 'in concert' with the defendant to commit the predicate offenses." *Id.* at 411. The third element requires the government "to present sufficient evidence that a total of at least three other persons acted in concert with Daniels to commit one or more of the" predicate offenses. *Id.* at 412. The court also explained that because a CEE charge requires proof of at least two people acting "in concert" with the defendant, conspiracy is a lesser included offense of CEE. *Id.* at 412-13.

The court then addressed whether "the government presented evidence that two other persons conspired with [Daniels] on any of the" predicate offenses. *Id.* at 413. In addressing counts 2 and 3—manufacturing and distributing child pornography—the court noted that both counts "involved no participants other than Daniels," his "lead prostitute," and the underage subject of the pornographic materials, H.H. *Id.* at 405, 406, 413. However,

> [a]s the victim, HH cannot be deemed a co-conspirator. When a crime inherently requires 'two to tango,' but the statute is not intended to punish the victim of the crime—as is the case in prostitution or the manufacture of pornography—federal courts regularly apply a common-law exception to conspiratorial or accomplice liability.

*Id.* at 413. To support its conclusion, the Sixth Circuit cited to the model penal code's prohibition on charging a victim of a crime as an accomplice to that crime and *Gebardi*. *Id.*

We find *Daniels* unpersuasive. *Daniels* was decided in 2011, five years before the U.S. Supreme Court decided *Ocasio*, which clarified that *Gebardi* was not a blanket prohibition on charging defendants incapable of committing the underlying offense as co-conspirators.

16

No. 59948-1-II

Floe fails to show that because he was the victim of the assault and drive-by shooting, he cannot be held criminally liable for conspiring to facilitate those crimes. Thus, we affirm his conspiracy convictions.

## CONCLUSION

Floe's argument that because he was the victim of the assault and drive-by shooting, he cannot be held criminally liable for conspiring to commit those offenses fails. Therefore, we affirm Floe's convictions.

Lee, J.

We concur:

Price, J.

Che, J.

17